51 A.3d 161

KATHERINE MILNE, PLAINTIFF–APPELLANT, v. ROBERT
GOLDENBERG, DEFENDANT–RESPONDENT.

KATHERINE MILNE, PLAINTIFF–RESPONDENT, v. ROBERT
GOLDENBERG, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued May 23, 2012—Decided September 12, 2012.

Before Judges LIHOTZ, WAUGH and ST. JOHN.

*Dale E. Console* argued the cause for Katherine Milne, appellant in Docket No. A–4062–10 and A–4319–10 and respondent in Docket No. A–4594–10.

*Robert Goldenberg,* respondent in Docket No. A–4062–10 and A–4319–10 and appellant in Docket No. A–4594–10, argued the cause pro se.

The opinion of the court was delivered by

LIHOTZ, J.A.D.

The parties appeal from four post-judgment orders in this highly contentious and litigious matrimonial matter. Plaintiff Katherine Milne challenges provisions set forth in Family Part orders dated March 10, 2011, March 23, 2011, and September 30, 2011, the latest of which was entered following our limited remand. Defendant Robert Goldenberg appeals from an April 29, 2011 order, which reallocated the parties' obligations to satisfy the guardian ad litem (GAL) expense. We ordered all matters consolidated on appeal and address them in a single opinion. Following our review, we affirm each of the challenged orders, except for a provision in the March 23, 2011 order appointing a parenting coordinator.

I.

The following facts are taken from the record of the trial court proceedings resulting in the orders under review. In addition to general background information regarding the parties' matrimonial litigation, we limit our recital of the facts to the specific provisions of the many orders, as necessary to provide context to the issues presented on appeal.

A.

Following trial in 2007, a dual final judgment of divorce (JOD) dissolved the parties' nineteen-year marriage. The divorce judge [1]

found the pendente lite shared custodial arrangement for the parties' two special needs children was "not working[.]" The parties had agreed the children would remain in the former marital home and each party, on an every other alternating week basis, would occupy the home and care for the children. The divorce judge terminated this process, finding "[b]oth parents [were] unable to reach a consensus on parenting styles and other child related matters" and had "not been able to put aside the anger and hostility they feel toward each other and make decisions in the best interest of [the children]." The divorce judge adopted the parenting plan proposed by plaintiff, which designated her as the parent of primary residence (PPR), defendant as the parent of alternate residence (PAR), and set defendant's parenting time as 117 overnights and 52 midweek visits each year. The JOD also continued the pre-trial appointment of Dr. Amie B. Wolf–Mehlman as the parties' Parenting Coordinator (PC). Dr. Wolf–Mehlman, in her role as PC, was "to assist the parties in changing or modifying [the] parenting plan or resolve any [parenting time] disputes that may arise[.]"

Plaintiff and defendant appealed from provisions of the JOD. Plaintiff challenged various financial provisions and defendant challenged the appointment of plaintiff as the PPR. *Milne v. Goldenberg*, No. A–2822–07, 2009 *WL* 3460219 (App.Div. Oct. 15, 2009) (slip op. at 2). On October 15, 2009, in an unpublished opinion, we affirmed. *Id.* at 15.

While the appeal was pending, plaintiff moved for modification of the parenting time provisions. In orders dated March 9, 2009, and April 21, 2009, a different Family Part judge (the motion judge) directed the parties to "resume seeing a parenting coordinator[.]" However, plaintiff had terminated Wolf–Mehlman's services in November 2007, prior to the entry of divorce, because she

---

1 Because several Family Part judges were involved in these many proceedings, we attempt to differentiate them by describing their roles.

"disagreed with her recommendations" and felt "[d]efendant was abusing the [parent coordination] process." Defendant moved to enforce the JOD regarding cooperation with a PC. This request was denied.

Plaintiff next moved to appoint a custody expert to evaluate the children, which was met by defendant's cross-motion to enforce litigant's rights regarding parenting time and requiring use of the PC. The motion judge denied plaintiff's request and vacated the prior orders requiring use of a PC. The motion judge appointed Linda Schofel as the children's GAL, explaining:

> [I]t's clear to me that this case requires more than a parent coordinator. . . .
>
> So, what I am doing is I am appointing a [GAL] that's going to represent the [children's] interests .. and I'm appointing Linda Schofel ... who is an attorney and also has ... a strong background in social sciences, social services. I forget if she has her MSW.... And I am going to appoint her to do an evaluation, meet with the [children], meet with you and I am going to follow her recommendations. I am concerned that the two of you can't conduct yourselves as responsible parents and that's why I'm seeking the input of a [GAL]. And understand that if she tells me that it might be in the [children's] interests that neither of you have any parenting time with them, then I will do that because I am here to protect the interest of the children.

The motion judge ordered the parties to "fully cooperate with ... Schofel's requests" and equally pay her $5000 retainer, within ten days. Any additional fees due Schofel were to be split equally and paid "in a timely manner."

As Schofel performed her assessment, several motions were filed by the parties regarding various parenting issues, which do not impact our review. However, the motion judge granted defendant's application requiring plaintiff to pay her share of the outstanding balance of Schofel's fees, totaling $5,232.12. Again, plaintiff was ordered to satisfy all future payments "in a timely fashion[.]"

Prior to preparing a formal written report to the court, the parties were ordered to meet with Schofel "to discuss her preliminary thoughts and recommendations as to how to best help [the children.]" The motion judge also appointed Ellen Marshall, an attorney, as the new PC, and required her fees to be paid equally.

During a conference that included the parties and their counsel, Schofel discussed her findings and recommendations. Following that five-hour meeting, Schofel believed the issues "had now been settled[,]" and agreed to draft a consent order memorializing the agreement. Correspondence in respect of the alleged terms of settlement was exchanged. However, plaintiff rejected all recommendations.

B.

The March 10, 2011 order emanated from defendant's November 5, 2010 motion seeking enforcement of litigant's rights. He included twenty-six requests, many of which centered around plaintiff's non-payment of previously ordered financial obligations and the remainder alleged changed circumstances necessitated modification of alimony and child support. Before the motion was heard, defendant also filed a separate emergent motion seeking sole custody of the children, implementation of Schofel's parenting time recommendations, enforcement of prior orders to pay the GAL and PC's fees, and attorney's fees.

Plaintiff filed her own motion seeking the motion judge's recusal. She also sought Marshall's removal and Wolf–Mehlman's return as PC. Finally, plaintiff requested Schofel's termination as GAL with a refund of all fees that had been paid to date. Plaintiff separately responded to defendant's motions, opposing his requests, particularly the motion for sole custody, and filed a cross-motion listing her own application for enforcement of provisions of the JOD and payment of defendant's share of unreimbursed medical expenses.

The motion judge denied defendant's emergent application for change in custody, recused herself, and reassigned all remaining issues to a new Family Part judge (the trial judge). Prior to the next motion hearing, plaintiff supplemented her submissions with another motion for enforcement of litigant's rights, seeking to compel defendant's payment of alimony and attorney's fees.

On March 7 and 8, 2011, the trial judge considered all of the issues presented by the respective motions. Both Schofel and Marshall appeared along with the parties and their counsel.

Plaintiff asserted Schofel must be removed and she must refund the fees paid because the court lacked jurisdiction to appoint a GAL when "the case was pending on appeal[.]" The trial judge rejected this argument and found "no basis to remove" the GAL. He ordered Schofel's appointment nunc pro tunc, effective May 29, 2009, and ordered plaintiff to pay Schofel's outstanding bills within ten days.

The trial judge also found plaintiff violated past orders to enforce provisions of the JOD. The orders required plaintiff to satisfy certain federal income tax liability and the accruing penalties assessed for late filing and payment. Notwithstanding that the obligations were clearly imposed by post-judgment orders mandating plaintiff's payment and imposed daily sanctions, she had yet to satisfy the debt. The trial judge recognized plaintiff's unemployment as precluding payment of the previously imposed sanctions, so he ordered plaintiff to perform 120 hours of community service, supervised by the Essex County Probation Department.

The trial judge allowed additional discovery and scheduled a hearing for March 21, 2011, "concerning the [GAL]'s recommendations[.]" The order stated "[t]he issues raised in [d]efendant's ... [o]rder to [s]how [c]ause relating to custody of the minor children, the [c]ourt's adoption of the recommendations of the [GAL], and the mental and physical health issues of the minor children shall be addressed at the hearing[.]"

The trial judge also rejected plaintiff's application to remove Marshall, based on plaintiff's assertion Marshall failed to qualify as a PC under the Parenting Coordination Pilot Program Guidelines as adopted by the Supreme Court. The trial judge reasoned the pilot program was not implemented in Essex County so the Guidelines regarding the qualifications for PCs were "not relevant" to the parties' matter. Accordingly, Marshall was appointed

nunc pro tunc effective June 21, 2010, and plaintiff was ordered to sign Marshall's retainer agreement, pay her half of her retainer, and cooperate with parent coordination services. The trial judge directed the role of the PC was "to resolve certain parenting issues between the parties. The [PC] is to assist the parties in changing or modifying the [p]laintiff's parenting plan, to resolve any disputes that may arise under this plan, and to perform as otherwise [o]rdered by this [c]ourt."

C.

Guided by *Rule* 5:8B, the trial judge held a two-day hearing concerning the GAL's recommendations. The record suggests although correspondence between Schofel and the parties' counsel was exchanged, a formal written GAL report was never prepared. The trial judge noted, "the [GAL] provide[d] her services to the [c]ourt on behalf of the children ... [and] act[ed] as an independent fact finder, investigator, and evaluator as to what furthers the best interests of the children." Consequently, "like any other witness, the court can accept all of the testimony of the witness, some of it, or none of it."

Prior to commencement of the hearing, plaintiff suggested the parties would need to testify and requested an adjournment to obtain an expert, presumably to challenge the recommendations advanced by the GAL. The trial judge denied the request, explaining this was "a limited hearing" and *Rule* 5:8B permitted only the GAL to testify, subject to cross-examination, without testimony from the parties or other experts.

Responding to broad questions posed by the trial judge, Schofel related her education, past employment, licenses and general qualifications. Next, she discussed facets of her undertaking, estimated to have occurred over thirty to thirty-seven hours, including: meeting with the parties, the children, other relatives, physicians and therapists who were treating the parties and the children, along with other professionals or collateral contacts; reviewing pleadings, orders, and written communications between

the parties; and considering psychological treatises, articles, and materials relevant to the issues presented. She then delineated her recommendations for custody, parenting time, and related issues that would best aid the children. Thereafter, each party conducted cross-examination, identifying inconsistencies or conflicts in Schofel's testimony. Each side presented a summation and the trial judge reserved his decision.

The following morning, the trial judge placed his opinion on the record. The trial judge affirmed the purpose of the hearing was to present the GAL's report as allowed by *Rule* 5:8B and to finalize the balance of the issues raised in defendant's emergent application regarding a change of custody and other relief. The trial judge found Schofel's credentials were impressive and she was well-qualified to fulfill the GAL appointment. He noted Schofel undertook her investigational work in a "professional, thorough, and even-handed fashion" and found her testimony credible.

The trial judge considered the arguments advanced by plaintiff and defendant in favor of or opposing recommendations offered by the GAL. Accordingly, the trial judge reviewed each issue, at times adopting and at times rejecting Schofel's recommendations. The trial judge entered the March 23, 2011 order memorializing his opinion.

D.

Two issues remained following the hearing: defendant's application for an award of counsel fees and final payment of the monies due Schofel. As a result of the trial judge's leave of absence, a new Family Part judge (the new motion judge) was assigned to determine these issues.

Schofel submitted her final certification of services, and included the amounts she believed were due from each party based upon the order requiring them to pay equally. Her calculations showed defendant owed $9,243.12, and plaintiff owed $27,552.69. Without further argument, the new motion judge issued a letter opinion denying defendant's request for attorney's fees. Further, after

determining the initial order allocating the GAL expense was "stale," the new motion judge reallocated the $54,000 GAL expense, which he had reduced from approximately $80,000, to be paid "one third [by] the plaintiff wife and two thirds [by] the defendant husband." An April 29, 2011 order memorialized the new motion judge's determination.

E.

Plaintiff timely sought leave to appeal and requested a stay of the March 10, 2011 order imposing the community service sanction. However, we determined the order was final, mooting the request for leave. We stayed the provision ordering her to perform community service. Plaintiff corrected her pleadings and filed a notice of appeal.

Plaintiff separately appealed from the March 23, 2011 trial judge's order, asserting she was denied due process during the hearing because the trial judge refused to allow her to testify or otherwise present evidence. She requests that order be vacated in its entirety.

In plaintiff's appeal from the April 29, 2011 order challenging the allocation of the payment obligation to Schofel, a limited remand was sought to address defendant's motion for reconsideration of the order. Additionally, Schofel had moved for inclusion of her letter dated May 2, 2011 within the appellate record, which addressed her fees. We granted a temporary remand to allow the Family Part to consider these two requests.

Because the new motion judge had retired, the case was reassigned to another Family Part judge (the final motion judge). He considered Schofel's letter and found no reason to exclude it from the record on appeal. The final motion judge also confirmed the allocation of Schofel's fees, but vacated and reconsidered defendant's request for attorney's fees. After reviewing the attorney fees request, the work performed, orders entered in the matter, and other factors set forth in *Rule* 5:3–5(c), the final motion judge awarded defendant $10,000, which was set forth in the order dated

September 30, 2011. Plaintiff amended her notice of appeal of the April 29, 2011 order to include the September 30, 2011 order.

## II.

Generally, the special jurisdiction and expertise of the family court requires that we defer to factual determinations if they are supported by adequate, substantial, and credible evidence in the record. *Cesare v. Cesare*, 154 *N.J.* 394, 413, 713 *A.*2d 390 (1998). *Accord N.J. Div. of Youth & Family Servs. v. E.P.*, 196 *N.J.* 88, 104, 952 *A.*2d 436 (2008); *N.J. Div. of Youth & Family Servs. v. G.L.*, 191 *N.J.* 596, 605, 926 *A.*2d 320 (2007). It is well settled that Family Part factfinding receives particular deference because of "the family courts' special jurisdiction and expertise in family matters," *Cesare, supra*, 154 *N.J.* at 413, 713 *A.*2d 390, which will be disturbed only upon a showing that the findings are " 'manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence' " to ensure there is no denial of justice, *Platt v. Platt*, 384 *N.J.Super.* 418, 425, 894 *A.*2d 1221 (App.Div.2006) (quoting *Rova Farms Resort, Inc. v. Investors Ins. Co. of Am.*, 65 *N.J.* 474, 484, 323 *A.*2d 495 (1974)).

Also, we accord great deference to discretionary decisions of Family Part judges. *Donnelly v. Donnelly*, 405 *N.J.Super.* 117, 127, 963 *A.*2d 855 (App.Div.2009) (citing *Larbig v. Larbig*, 384 *N.J.Super.* 17, 21, 894 *A.*2d 1 (App.Div.2006)). " '[J]udicial discretion connotes conscientious judgment, not arbitrary action; it takes into account the law and the particular circumstances of the case before the court.' " *Hand v. Hand*, 391 *N.J.Super.* 102, 111, 917 *A.*2d 269 (App.Div.2007) (quoting *Higgins v. Polk*, 14 *N.J.* 490, 493, 103 *A.*2d 1 (1954)). An abuse of discretion "arises when a decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.' " *Flagg v. Essex Cnty. Prosecutor*, 171 *N.J.* 561, 571, 796 *A.*2d 182 (2002) (quoting *Achacoso–Sanchez v. Immigration & Naturalization Serv.*, 779 *F.*2d 1260, 1265 (7th Cir.1985)). However, a judge's legal decisions are subject to our plenary review.

*Crespo v. Crespo,* 395 *N.J.Super.* 190, 194, 928 *A.*2d 833 (App.Div. 2007) (citing *Manalapan Realty, L.P. v. Twp. Comm. of Manalapan,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995)); *Lobiondo v. O'Callaghan,* 357 *N.J.Super.* 488, 495, 815 *A.*2d 1013 (App.Div.), *certif. denied,* 177 *N.J.* 224, 827 *A.*2d 291 (2003).

## III.

### A.

■ We start with plaintiff's challenge to the March 10, 2011 order imposing community service for her failure to comply with past orders regarding the payment of a joint federal income tax liability. Plaintiff's delay in resolving her ordered obligation resulted in the seizure of defendant's subsequent income tax refund. She argues the imposition of sanctions was an abuse of discretion because she had engaged a third-party to resolve the income tax issues. We disagree.

■ *Rule* 1:10–3 allows a court to enter an order to enforce litigant's rights commanding a disobedient party to comply with a prior order or face incarceration. *Saltzman v. Saltzman,* 290 *N.J.Super.* 117, 125, 675 *A.*2d 231 (App.Div.1996). Once the court determines the non-compliant party was able to comply with the order and unable to show the failure was excusable, it may impose appropriate sanctions. *Id.* at 123, 675 *A.*2d 231. Sanctions under *Rule* 1:10–3 are intended to coerce a party's compliance. *Ridley v. Dennison,* 298 *N.J.Super.* 373, 381, 689 *A.*2d 793 (App.Div.1997).

Prior orders regarding plaintiff's satisfaction of the tax liability, which was shown to have increased from an initial amount of $10,311, to a total obligation with penalties and interest of $61,984, included imposing time deadlines for payment, extending those time deadlines, a mounting daily sanction for non-payment, an award of attorney's fees to defendant, and the issuance of a bench warrant. Plaintiff remained non-compliant. During this hearing, plaintiff demonstrated her recent unemployment impeded her ability to satisfy daily sanctions, so the trial judge amended the

order, eliminating the financial penalty in favor of 120 hours of community service.

During the ability to pay hearing, at which plaintiff testified, the trial judge found plaintiff's non-compliance was deliberately designed to delay satisfaction of the obligation, as she had "a significant amount of money ... [at] her disposal, while she was not complying with these court orders." The judge found plaintiff's failure to pay was willful, as she intentionally "prioritize[d]" her funds and ignored the obligation. In imposing the community service obligation, the trial judge noted there is a need to maintain the "integrity and enforceability" of the court's orders, "otherwise they become suggestions or recommendations[.]"

Deferring to the trial judge's factual findings regarding plaintiff's ability to pay and her willful non–compliance, which are facts supported by the evidence in the record, we conclude the imposition of community service hours rather than incarceration was a reasonable exercise of judicial discretion. We will not alter the order.

### B.

### 1.

We next examine a number of challenges to procedure followed during the March 21 and 22, 2011 hearing to consider the GAL's recommendations. Plaintiff argues her due process rights were infringed by the trial judge's denial of the opportunity to present witnesses and her own testimony. Before reviewing this argument, we examine the role of a GAL.

"In all cases in which custody or parenting time/visitation is an issue, a [GAL] may be appointed by court order to represent the best interests of the child or children if the circumstances warrant such an appointment." *R.* 5:8B(a). The rule is grounded in the Legislature's adoption of *N.J.S.A.* 9:2–4c, which permits a court, "for good cause and upon its own motion ... [to] appoint a [GAL] or an attorney or both to represent the minor child's interests[,]"

and affirms the Family Part's obligation to protect children enmeshed in parental disputes. *See Vannucchi v. Vannucchi,* 113 *N.J.Super.* 40, 47, 272 *A.*2d 560 (App.Div.) ("In the exercise of their *parens patriae* jurisdiction our courts look always to the protection of the child's best interests[.]"), *certif. denied,* 58 *N.J.* 163, 275 *A.*2d 744 (1971). *See also N.J.S.A.* 9:2–4c ("In any proceeding involving the custody of a minor child, the rights of both parents shall be equal and the court shall enter an order which may include: ... Any other custody arrangement as the court may determine to be in the best interests of the child.").

Once appointed, the GAL provides "services ... to the court on behalf of the child ... [and] acts as an independent fact finder, investigator and evaluator as to what furthers the best interests of the child." *In re M.R.,* 135 *N.J.* 155, 173, 638 *A.*2d 1274 (1994) (internal quotation marks omitted). The GAL's findings and recommendations are submitted to the court. *R.* 5:8B(a). Specifically,

> in addition to the preparation of a written report and the obligation to testify and be cross-examined thereon, the duties of a guardian may include, but need not be limited to, the following:
>
> 1. Interviewing the children and parties.
>
> 2. Interviewing other persons possessing relevant information.
>
> 3. Obtaining relevant documentary evidence.
>
> 4. *Conferring with counsel for the parties.*
>
> 5. Conferring with the court, on notice to counsel.
>
> 6. Obtaining the assistance of independent experts, on leave of court.
>
> 7. Obtaining the assistance of a lawyer for the child (*Rule* 5:8A) on leave of court.
>
> 8. Such other matters as the guardian ad litem may request, on leave of court.
>
> [*Ibid.*]

Finally, a GAL "must be available to testify and, like any other witness, is subject to cross-examination." *Fawzy v. Fawzy,* 199 *N.J.* 456, 484, 973 *A.*2d 347 (2009). *Accord R.* 5:8B(a).

In this matter, even before the entry of the JOD, these parents relentlessly disputed parenting time and custody. The most recent post-judgment allegations, initiated by defendant's request

for sole custody, were a continuation of an established pattern of dueling attacks on parental fitness. In their cross-motions, the parties suggested the children were experiencing physical symptoms resulting from the emotional turmoil stirred by their parents' acrimony. In an effort to ferret out the situation, Schofel was appointed.

Plaintiff maintains the GAL was merely one witness whose testimony should not be considered "in a vacuum." Plaintiff equates the appointment of a GAL with the court's appointment of any other expert, arguing the court cannot appoint a GAL "and dispense with a full trial" necessary to "test the validity of the [GAL]'s facts or her conclusions[.]" Although we agree in general with such a statement and conclude the trial judge employed too restrictive an interpretation of *Rule* 5:8B, we nevertheless find, in the context of this case, the error was harmless.

We first clarify the issue regarding the parties' ability to contest the facts presented by a GAL. As an investigator acting at the direction of the court, a GAL must report on those facts bearing on a child's best interest. *Rule* 5:8B(a) defines the method by which these facts are expressed to the court and the parties. The rule states the GAL issues a written report and must appear for examination and cross-examination by the parties. *Ibid.* A GAL would have no perceived bias in favor of one parent's position because the GAL's role is to act on behalf of the court and present the best interests of the children. *Ibid.* That role, however, would not obviate presentation of evidence refuting a GAL's factual assertions. Consequently, a parent or other witness may present evidence which clarifies, refutes, or supplements the testimony of the GAL.

When faced with evidence of disputed material facts, a judge must permit a plenary hearing in order to reach a resolution. *Tretola v. Tretola,* 389 *N.J.Super.* 15, 20, 910 *A.*2d 630 (App.Div.2006). Similarly, "disputes implicating the welfare of a child and involving conflicting contentions and opinions of lay and

expert affiants must be submitted to a plenary hearing." *Fusco v. Fusco,* 186 *N.J.Super.* 321, 329, 452 *A.*2d 681 (App.Div.1982).

Also important is the scope of the GAL's role. Although acting as a fiduciary on behalf of the court, the GAL's report and recommendations may never serve as a substitute for the court's exercise of its *parens patriae* obligation. Consequently, a trial judge is never bound to accept a GAL's recommendations, and must never "cede ... responsibility and authority[,]" or "abdicate [the] decision-making role to an expert." *P.T. v. M.S.,* 325 *N.J.Super.* 193, 216, 738 *A.*2d 385 (App.Div.1999). Therefore, the posture of the evidentiary hearing may not necessarily be limited solely to the GAL's testimony and evidence.

Turning to the facts presented in this matter, we note the motion judge appointed a GAL on May 29, 2009. At that time, the parties' motions raised numerous parenting time disputes. Their respective positions demonstrated they were unable to resolve minor matters (such as defendant's request to be provided with a copy of the children's height and weight charts), or major concerns (such as whether modifications in evening or holiday parenting should occur). A prior appointment of a PC, designed to help the parties rationally discuss and reasonably resolve parenting time disagreements, failed. Unfortunately, the parties persisted in litigating the smallest of slights in their never-ending battle for advantage.

In the series of motions culminating in the evidentiary hearing, plaintiff sought appointment of a custody expert, presumably to support her belief that when it comes to defendant's time with his children, less was more desirable. The motion judge denied that request, expressed her "concern" that the parents could not "conduct [them]selves as responsible parents[,]" and appointed a GAL.

Perhaps the best course would have been for the motion judge to order a hearing to test the parties' competing claims, enter an order outlining the boundaries of acceptable conduct, and insist on

compliance with any orders entered. In any event, Schofel began her evaluation, which was not completed until July 14, 2010. The motion judge additionally delayed ultimate resolution by requiring the parties to mediate the matter. Defendant then filed the November 5, 2010 motion, triggering another series of quarrels between the parties. From May 2009 to February 2010, the parties' certifications encompassed hundreds of pages.

During her appointment, the GAL had not prepared a written report, predominately because plaintiff had not fulfilled her responsibility to provide payment. The March 2011 hearing was designed to obtain the fruits of Schofel's investigation and subject her recommendations to cross-examination. Under these unusual circumstances, the trial court's limitation on the scope of the hearing was not unreasonable.

We also note despite her protest of the procedure employed, plaintiff offers no evidence she would have presented if permitted, which would have altered the final result. She neither lists those witnesses whose testimony would have materially disputed the facts asserted by Schofel, nor presents new facts not previously included in the volumes of pleadings before the court. In short, she shows no harm resulting from the process employed by the trial judge.

Plaintiff next maintains the trial judge abrogated responsibility to the GAL. We agree the motion judge erred in stating: "I am appointing a [GAL] . . . and I am going to follow her recommendations." However, we disagree this error infected the proceeding because the trial judge did not make the mistake of summarily adopting the recommendations of the GAL. Rather, he weighed the facts and independently determined each issue, after also considering the other evidence presented in the parties' pleadings. As our Supreme Court has explained:

The question of whether a trial court may make a sua sponte custody determination need not long detain us. The paramount consideration in child custody cases is to foster the best interests of the child. This standard has been described as one that protects the safety, happiness, physical, mental and moral welfare of the child.

It would be incongruous and counterproductive to restrict application of this standard to the relief requested by the parties to a custody dispute. Accordingly, a sua sponte custody determination is properly within the discretion of the trial court provided it is supported by the record.

[*Beck v. Beck*, 86 *N.J.* 480, 497, 432 *A.*2d 63 (1981) (internal quotation marks and citations omitted).]

The credible evidence in the record supports a finding that both parents provided excellent care for the children. However, their distrust and disgust for one another eliminated any hope of cooperative parenting. In this light, we find no error in denying further evidentiary proceedings prior to the trial court's modest modification of the parenting time schedule and its procedural implementation, in an effort to lessen parental interaction and curb opportunities to display acrimony.[2] *See Hand, supra*, 391 *N.J.Super.* at 111, 917 *A.*2d 269 (providing a court may modify custody or parenting time when it " 'takes into account the law and the particular circumstances of the case before the court[,]' " thereby demonstrating the implementation of a " 'conscientious judgment, [rather than] arbitrary action' " (quoting *Higgins, supra*, 14 *N.J.* at 493, 103 *A.*2d 1)).

2.

Plaintiff next attacks the provisions in the March 23, 2011 order appointing a PC, who is an attorney and not a mental health professional. Plaintiff argues the trial court erred because the Supreme Court Guidelines implementing the PC Pilot Program only allow appointment of attorneys with the parties' consent. Defendant suggests no abuse of discretion is presented, echoing the trial judge's comments that the Guidelines apply only to pilot counties, which did not include Essex County.

We conclude parties to a matrimonial dispute may agree to comply with defined obligations regarding their use of a PC, which

---

[2] The court order included slightly modified holiday time, reduced contact by allowing parental pick-ups to occur at school, added one-on-one time between defendant and each child, and ordered the continuation of third-party therapy and PC services.

do not violate the public policy of this State. However, any Family Part judge ordering the appointment of a PC must comply with the Supreme Court's established Guidelines. Because the Guidelines were not followed, that provision in the March 23, 2010 order is reversed.

The Pilot Program was approved by the Supreme Court on March 5, 2007, to be implemented in Bergen, Middlesex, Morris, Sussex, and Union Counties. *See Notice to the Bar: Parenting Coordinator Pilot Program,* 188 *N.J.L.J.* 169 (April 9, 2007), *available at* http://www.judiciary.state.nj.us/notices/2007/n070403a.pdf. The Guidelines explain a court may appoint a PC "to facilitate the resolution of day to day parenting issues that frequently arise within the context of family life when parents are separated ... [but unable to] resolve these issues on their own." *Id.* § I. The Guidelines require any appointee to meet the following qualifications:

A Parenting Coordinator may be a social worker, a psychologist, a psychiatrist, or a marriage and family therapist who shall be licensed to practice in the State of New Jersey by the appropriate State Board and agencies. If the parties consent, the court may designate as Parenting Coordinator a non-mental health lay person unrelated to either party or an attorney licensed in the State of New Jersey, so long as such individual is qualified by experience and/or training.

[*Id.* § II D(1).]

The use of a PC is designed to aid parents by providing a different forum to discuss parenting problems. The use of a PC may not substitute for a judge's determination in contested parenting issues pending before the Family Part. *Parish v. Parish,* 412 *N.J.Super.* 39, 53, 988 *A.*2d 1180 (App.Div.2010).

Although we are aware of no reported authority binding a non-pilot county to the Guidelines, we have no hesitation in ordering such a result. The pilot program is designed "to test the parenting coordinator concept," *Notice to the Bar, supra,* 18 *N.J.L.J.* 169, which was developed after receipt of input from judges, lawyers, mental health professionals, and other interested persons. The Guidelines establish the Supreme Court's operational details for a uniform approach to appointment of PCs and impose pur-

poseful boundaries on the PC role and those providing PC services.

We are very aware of Schofel's testimony recommending the attorney appointed as PC. Schofel believed "the parties needed a particular type of parenting coordinator, someone who would be very strong and not be intimidated by either [party] or manipulated by either [party]." Further, she stated the approved candidates were limited because of conflicts or their refusal to accept appointment to coordinate for these parents. While Schofel's pronouncements may be accurate, the Guidelines' expressed limitation on using attorneys absent consent of the parents is meaningful and cannot be disregarded. Consequently, we reverse the trial judge's appointment of an attorney as violative of the Guidelines' requirements. On remand, if a Family Part judge appoints a PC for these parents, future management of the PC is subject to the Guidelines, which contain procedures both for grievances, *see Notice to the Bar, supra,* § IV(8), and termination, *id.* § IV(12).

The remainder of the claims under this point heading are meritless, *R.* 2:11–3(E)(1)(E), including plaintiff's allegation the trial court impermissibly delegated its authority to the PC by directing her to explain to the parties their roles as PPR and PAR, failed to include a provision for the PC's removal, and erred by including "draconian language that failure to cooperate may result in a transfer of custody."

The trial judge's instruction, stating "[n]oncompliance by either of the parties *may be a basis* for a change in custody or, alternatively, a change in the designation of [PPR] and [PAR,]" is consistent with the Supreme Court's pronouncement in *Beck, supra,* 86 *N.J.* at 499, 432 *A.*2d 63, which states:

> The necessity for at least minimal parental cooperation in a joint custody arrangement presents a thorny problem of judicial enforcement in a case such as the present one, wherein despite the trial court's determination that joint custody is in the best interests of the child, one parent (here, the mother) nevertheless contends that cooperation is impossible and refuses to abide by the decree. Traditional enforcement techniques are singularly inappropriate in a child custody proceeding for which the best interests of the child is our polestar. Despite the obvious unfairness of allowing an uncooperative parent to flout a court decree, we are

unwilling to sanction punishment of a recalcitrant parent if the welfare of the child will also suffer. However, when the actions of such a parent deprive the child of the kind of relationship with the other parent that is deemed to be in the child's best interests, removing the child from the custody of the uncooperative parent may well be appropriate as a remedy of last resort.

*See also R.* 5:3–7(a)(6) (explaining remedies for a parent's violation of orders relating to custody or parenting time include "temporary or permanent modification of the custodial arrangement provided such relief is in the best interest of the children").

## C.

Plaintiff next argues the new motion judge should have capped the GAL's bills to an amount that was reasonable and necessary. Tied to this issue is defendant's challenge to the final allocation of the GAL fees and plaintiff's objection to an award of counsel fees to defendant.

We have reviewed the parties' arguments on each of these issues in light of the record and applicable law. We find no abuse of discretion and determine these arguments lack sufficient merit to warrant lengthy discussion in our written opinion. *R.* 2:11–3(e)(1)(E). We add these brief comments.

A GAL is entitled to compensation for services at an hourly rate "fixed in the initial appointing order[.]" *R.* 5:8B(d). The GAL must "submit informational monthly statements to the parties ... [and] a certification of services at the conclusion of the matter, on notice to the parties, who will thereafter be afforded the right to respond prior to the court fixing the final fee." *Ibid.* Finally, the trial judge has "the power and discretion to fix a retainer in the appointing order and to allocate final payment of the [GAL] fee between the parties." *Ibid.*

Here, the appointing order fixed the GAL's retainer and the parties' respective obligations for payment. The order did not fix the GAL's hourly rate; however, no objection to this omission was raised. Additionally, the final assessment of the parties' obligation for payment was made following full opportunity to challenge the aspects of the work performed and the fees charged.

See *In re Adoption of a Child by J.D.S. II,* 353 *N.J.Super.* 378, 403–04, 803 *A.*2d 123 (App.Div.2002) (noting the trial court failed to set an hourly rate for GAL in appointing order and remanding for the trial court's consideration of plaintiff's challenge to the fee), *aff'd,* 176 *N.J.* 154, 820 *A.*2d 1237 (2003).

We also reject plaintiff's claim of misapplied discretion in the motion judge's failure to require Schofel's submission of a written report. In deference to plaintiff's objection to the cost, the motion judge proposed, and the parties accepted, a meeting with the GAL to review her findings. The procedure was also an effort to reach agreement on some or all issues, which would have narrowed or eliminated the need for a further hearing.

We determine this procedure accomplished the intent and purpose of *Rule* 5:8B. We conclude the modification of the procedure had no prejudicial effect on plaintiff's interest; rather, it was directed to efficiently resolve the controversy. *See R.* 1:1–2(a) (providing the rules may be relaxed so long as they are "construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay").

We turn to plaintiff's argument challenging the amount of the GAL expenses and defendant's argument that the new motion judge erred in ordering an unequal allocation of the GAL expenses. Having considered the parties' respective challenges, we are not persuaded an abuse of discretion occurred.

The GAL initially sought fees in excess of $80,000, but the new motion judge reduced her entitlement to $54,000, after eliminating charges determined to be unreasonable. The modification of the allocation of this sum as between the warring parents was a direct function of their ability to pay. The record reflects tax returns were reviewed showing that of the total income earned, plaintiff earned 37.3% while defendant earned 62.61%. The new motion judge did not find support for defendant's contention plaintiff's untoward motives and conduct were "the direct and proximate

cause of the substantial increase in the [GAL]'s fees[.]" Modifying the initial appointment order directing equal allocation of the fees was reasonable in light of plaintiff's ability to pay because she was unemployed, a fact well supported by the record. We find the new motion judge's basis for deviating from the allocation stated in the initial order appointing the GAL was clearly articulated and grounded on facts in the record. Defendant's claim that the unequal allocation was arbitrary or capricious is unsupported.

We further reject plaintiff's challenge suggesting the final motion judge's attorney fee award was unsupported. The final motion judge properly reviewed the parameters of *Rule* 5:3–5(c) and applicable case law regarding such awards in family matters. We find no "clear abuse of discretion" warranting our interference with the award of counsel fees ordered. *Strahan v. Strahan*, 402 *N.J.Super.* 298, 317, 953 *A.*2d 1219 (App.Div.2008).

The final motion judge relied on the trial judge's award of fees to defendant resulting from the enforcement of litigant's rights filed on November 5, 2010, and order to show cause filed on November 23, 2010. Following our review of the record of these proceedings, we conclude the trial court's findings in support of the fees awarded to defendant were proper. The court considered the necessity of the services incurred in enforcing the prior orders, per *Rule* 1:10–3.

## IV.

In summation, except for the appointment of the PC set forth in the March 23, 2011 order which is reversed, we affirm the remaining orders in all other respects as discussed in this opinion.

We note two motions to supplement the record were deferred pending our review (M–006816–10 and M–007097–10). We concluded no supplemental material was necessary. Accordingly, the motions are denied.

Affirmed in part and reversed in part.