# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1957-19T2

N.M.R.,

    Plaintiff-Respondent,

v.

A.L.,

    Defendant-Appellant.

_____

    Submitted December 14, 2020 – Decided  January 15, 2021

    Before Judges Messano and Suter.

    On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FV-14-0075-20.

    William J. Rush, attorney for appellant.

    Respondent has not filed a brief.

PER CURIAM

Defendant A.L.[1] appeals from a final restraining order (FRO) entered on December 4, 2019, under the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35.[2]  Defendant contends the court erred by finding he committed the predicate offenses of harassment and cyber-harassment, that the FRO was necessary to protect plaintiff N.M.R. from future domestic violence, and that he was deprived of a fair trial.  We affirm the FRO, limited to the predicate act of harassment.

I.

Plaintiff filed a complaint under the Act on July 15, 2019, requesting a temporary restraining order (TRO) against defendant for the predicate acts of harassment, N.J.S.A. 2C:33-4, and cyber-harassment, N.J.S.A. 2C:33-4.1.[3]  An FRO hearing was conducted on December 4, 2019.  We relate the evidence from that hearing.

---

[1]  We use initials to protect the identity of victims of domestic violence and to preserve the confidentiality of these proceedings.  R. 1:38-3(d)(9) to -(10).

[2]  N.J.R. did not file a brief.

[3]  Defendant did not include a copy of the initial complaint.  He included the amended TRO dated July 23, 2019 and as it was amended again on December 4, 2019.

Plaintiff and defendant had a dating relationship that was "off and on" — because he was married— from October 2015 to April 2019. She broke off the relationship after learning defendant slept with another woman. Shortly after, defendant sent plaintiff text messages saying, "I'm coming the fuck over . . . [s]o either you guys leave or call the cops." She agreed to go with him to the Short Hills Mall, but they argued. He took her home, driving erratically and punching the steering wheel, even telling her to get out of the car and then to get back in. He apologized and wanted to take her out again saying in a text message, "I won't be scary, LOL, if you want to get out."

Defendant learned in February 2019 that he suffered a reoccurrence of cancer. He acknowledged he was not faithful to plaintiff and that "threw her over the edge, honestly," but defendant claimed the medication, chemotherapy and radiation for cancer affected his state of mind.

Plaintiff transferred her gym membership to avoid defendant. When he found out, he sent her a text message that he would reveal explicit videos of her stating, "Fuck you . . . everyone will see all you've done, every fucking video . . . . Fuck you, fucking whore . . . You ruined us. Yeah. Now I moved on for good."

3                                                    A-1957-19T2

Plaintiff testified defendant began to email her three times a day and leave voicemail messages on her phone. On May 10, 2019, she told him to leave her alone. She blocked all his communications to her. However, defendant bypassed the blocks, using other phone applications.

Defendant continued to call plaintiff twice a week and left messages. In one of those messages on May 16, 2019, defendant revealed he was driving around plaintiff's house when she was away on vacation. Defendant called her four times on May 23, 2019, using four different phone numbers and a pseudonym. Defendant texted her that "honestly, you deserve everything you get done to you and I hope Karma is nice because it's outrageous what you're doing and done to me." He threatened to kill himself. She received a receipt from her previous gym that defendant attempted to charge $3,000 on her credit card. He accessed her "Quizlet" account to attempt to communicate with her. Defendant left a voicemail on July 3, 2019, that "[s]o, I know you just keep blocking everything and all that, which is cool, I guess, I should probably just take the hint and not worry about any closure or anything. I guess I can't get that. I don't know."

Plaintiff filed a complaint under the Act on July 15, 2019, alleging defendant committed the predicate acts of harassment and cyber-harassment,

A-1957-19T2

and requesting a TRO. She amended it on July 23, 2019, to add additional factual allegations. The complaint was not served until November 2019, because defendant claimed he was in the hospital for cancer treatments. He continued to send messages to plaintiff on an application called "WhatsApp" saying his love for her would "never die" and he was praying they would be back together.

On November 26, 2019, defendant sent plaintiff this final message:

> Yes. This will be my last message to you since the police have been trying to find me to hand me a restraining order for you. LOL. So, it's whatever. I guess you're happy now, and I'm blessed to be able to see you being happy. Even though deep down I miss you, and I feel you miss me, too, that feeling has to be washed away. I continue to wish you nothing but happiness and good health and hope you and your boyfriend live happy forever.

Plaintiff testified she was "very scared" of defendant and did not know what he was capable of. She was not "living a safe life" and had been "in hiding." Plaintiff testified she felt threatened and that messages from defendant were "affecting [her] daily lifestyle . . . ."

Defendant claimed he was not aware plaintiff blocked his messages "to that extent." Defendant acknowledged contacting plaintiff's mother and sister. He testified he might have sent messages threatening to post explicit videos of

plaintiff but could not recall. He denied communicating with her through other phone numbers. He admitted going into her Quizlet account, but claimed this was by accident. When asked about the multiple phone numbers used to contact plaintiff, defendant testified he did not know he was "blocked fully."

The trial court found plaintiff's testimony credible "in all material respects." She corroborated her testimony by emails which showed defendant's efforts to try to communicate with her.[4] The court did not find credible defendant's claim he was unaware plaintiff did not want his communications. The court found this "unfathomable" because defendant had obtained false phone numbers to communicate with plaintiff when she did not answer him. He was evasive in answering whether he knew his calls were blocked.

The court found by a preponderance of the evidence that plaintiff committed the predicate acts of harassment, N.J.S.A. 2C:33-4(c), and cyber-harassment, N.J.S.A. 2C:33-4.1(a)(2). For the harassment charge, the court found defendant's conduct met the requirement through "repeated communications," knowing plaintiff had blocked his communications and the

---

[4] Defendant did not include the emails in his appendix. Plaintiff did not file a brief. The emails cited here were read into the record and moved into evidence.

lengths he went to try to evade this. The court found the same reasons supported the predicate act of cyber-harassment.

The court also found an FRO was necessary to protect plaintiff from further abuse. This was based on the prolonged period of time defendant tried to contact plaintiff when she was clear she did not want communication. The court found some of the comments to plaintiff "disturbing," citing defendant's comment about calling the police, his comment that he would not be "scary," and saying "LOL" when the police were trying to serve him with the TRO.

On appeal, defendant raises the following issues:

POINT I: THE TRIAL JUDGE MISNTERPRETED THE HARASSMENT STATUTE AND ISSUED A FINDING INCONSISTENT WITH NEW JERSEY DOMESTIC VIOLENCE LAW
(Raised Below: 1T58) [.]

POINT II: THE TRIAL JUDGE MISINTERPRETTED THE CYBER[-]HARASSMENT STATUTE AND ISSUED A FINDING INCONSISTENT WITH NEW JERSEY DOMESTIC VIOLENCE LAW (Raised Below:1T58) [.]

POINT III: THE TRIAL JUDGE'S OPINION FAILED TO SUPPORT THE DETERMINATION THAT THE FINAL RESTRAINING ORDER WAS NECESSSARY TO PROTECT THE PLAINTIFF FROM FUTURE ACTS OF DOMESTIC VIOLENCE (Raised Below:1T59) [.]

POINT IV: THE TRIAL JUDGE FAILED TO QUESTION THE DEFENDANT REGARDING HIS USE OF MEDICATION, THE AMOUNT AND TYPE OF MEDICATION AND IF IT IMPACTED HIS ABILITY TO UNDERSTAND THE CHARGES AGAINST HIM AND THE RAMIFICATIONS OF A FINAL RESTRAINING ORDER (Not [R]aised [B]elow) [.]

II.

We accord "great deference to discretionary decisions of Family Part judges[,]" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters . . . ." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "[F]indings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Accordingly, "an appellate court should not disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid.

8

(alteration in original) (quoting Rova Farms, 65 N.J. at 484). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

Defendant argues the court did not make a finding under the Act that defendant's contacts were likely to cause annoyance or alarm. He argues there was no evidence he acted with a purpose to cause fear or apprehension. At best, this amounted to contretemps, not domestic violence.

When determining whether to grant an FRO under the Act, the trial court must engage in a two-step analysis. Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). The trial court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in [N.J.S.A. 2C:25-19(a)] has occurred." Id. at 125. This determination is made "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402). Second, the court also must determine whether a restraining order is required to protect the party seeking restraints from future acts or threats of violence. Id. at 126-27. That means "there [must] be a finding that 'relief is necessary to prevent further

abuse.'" J.D. v. M.D.F., 207 N.J. 458, 476 (2011) (quoting N.J.S.A. 2C:25-29(b)).

A person commits the offense of harassment if, "with purpose to harass another, he . . . [e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4(c). In evaluating a defendant's intent, a judge is entitled to use "[c]ommon sense and experience . . . ." State v. Hoffman, 149 N.J. 564, 577 (1997). Because direct proof of intent is often absent, "purpose may and often must be inferred from what is said and done and the surrounding circumstances," and "[p]rior conduct and statements may be relevant to and support an inference of purpose." State v. Castagna, 387 N.J. Super. 598, 606 (App. Div. 2006); see also H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003) ("'[A] purpose to harass may be inferred from' . . . common sense and experience." (quoting Hoffman, 49 N.J. at 577)).

In State v. Burkert, our Supreme Court held that for "constitutional reasons,"

> we will construe the terms "any other course of alarming conduct" and "acts with purpose to alarm or seriously annoy" as repeated communications directed at a person that reasonably put that person in fear for his safety or security or that intolerably interfere with that person's reasonable expectation of privacy.

10

[231 N.J. 257, 284-85 (2017).]

Burkert made clear that the standard "applies only in those cases where the alleged harassing conduct is based on pure expressive activity." Id. at 285. Burkert also made clear that even in a pure expression case, "a person who repeatedly makes unwanted communications to a subject, thereby intolerably interfering with his reasonable expectation of privacy, will not find shelter behind the First Amendment." Ibid.

There was substantial evidence in the record to support the trial court's finding that defendant committed harassment. From April 2019 through November 2019, when he was served with the TRO that had been entered in July 2019, defendant continued to call and text plaintiff daily. Defendant threatened to expose explicit videos of her. Plaintiff blocked his calls. Defendant then tried to contact her through special phone applications, false phone numbers and a pseudonym.

The court found plaintiff's testimony was credible. We defer to this credibility determination. See Cesare, 154 N.J. at 412 (providing "[b]ecause a trial court 'hears the case, sees and observes the witnesses, [and] hears them testify,' it has a better perspective than a reviewing court in evaluating the

veracity of witnesses" (quoting Pascale v. Pascale, 113 N.J. 20, 33 (1988) (alterations in original) (other citations omitted))).

Defendant's claim he did not know his communications were blocked is contrary to his July 3, 2019 voicemail. Defendant did not deny his behavior but blamed it on his cancer treatments. He did not present any expert testimony to connect his behavior to these treatments. All of this was sufficient for the trial court to conclude defendant engaged in a course of alarming conduct through repeated communications directed at plaintiff, which reasonably put her in fear of her security and certainly interfered with her reasonable expectation of privacy.

Defendant contends the trial court failed to make detailed findings of fact that an FRO was needed to protect plaintiff from further abuse. He claims plaintiff did not testify that he caused her to experience fear and apprehension.

This argument is undercut by the record. Plaintiff testified she was alarmed by defendant's behavior and changed her lifestyle to avoid him. She felt threatened. The attempt to contact her was for a "prolonged period of time where the plaintiff . . . made attempts to let [defendant] know she wants nothing to do with [him], and [he has] not taken no for an answer." Defendant's contacts were found by the trial court to be "disturbing." Defendant told plaintiff "either

you . . . leave or call the cops" when he said he was coming over to her house after the breakup. He scared her with his erratic driving and knew it, telling plaintiff "I won't be scary this time." His response to being served with the TRO was "LOL." He threatened to release explicit photos and video of plaintiff.

Defendant claims for the first time on appeal that he was deprived of a fair trial because the trial judge did not ask about his ability to understand the charges or the implications of having an FRO entered against him. However, defendant gave no indication during the trial that he did not understand the charges or the implications of the FRO. The court explained the nature of the proceeding. He asked defendant if he was ready to proceed. He gave defendant opportunities to expand his testimony. The transcript did not show anything about the trial that was "clearly capable of producing an unjust result . . . ." R. 2:10-2.

Given our decision under the harassment statute, we offer no opinion on whether there was a violation of the cyber-harassment statute. The harassment finding under N.J.S.A. 2C:33-4(c), and the finding there was a need to protect plaintiff from further harassment are all that are necessary to affirm entry of the FRO.

Affirmed based on the predicate act of harassment.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

13

A-1957-19T2