**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3750-23

DALIA D. TARICA,

      Plaintiff-Appellant,

v.

SCOTT C. DRAGES,

      Defendant-Respondent.

_____

          Submitted September 24, 2025 – Decided October 31, 2025

          Before Judges Gummer, Paganelli, and Jacobs.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FD-02-0455-15.

          Lawrence H. Kleiner LLC, attorney for appellant (Lawrence H. Kleiner, on the briefs).

          Scott C. Drages, respondent pro se.

PER CURIAM

    Plaintiff appeals from a Family Part order denying her application for sole

legal custody of the parties' child, H.D.[1]  She also appeals an order granting defendant's cross-motion to enforce a parenting-time plan and appoint a parenting coordinator to implement the plan.  On review of the record and pertinent legal principles, we affirm.

I.

Plaintiff and defendant are the parents of H.D., who was born in March 2014.  The parties had lived together in Pennsylvania, but their relationship deteriorated soon after H.D.'s birth.  In May 2014, plaintiff and H.D. moved to New Jersey and have lived here since.

Pursuant to terms of an initial order entered in the Court of Common Pleas of Philadelphia County in August 2015, the parties agreed to joint legal custody of H.D.  Defendant was entitled to "have partial physical custody of [H.D.] as mutually agreed upon by the parties in writing . . . .  [Plaintiff] shall not unreasonably withhold her consent to [defendant]'s requests for custodial time with [H.D.]."

In September 2016, on an interim basis, the Pennsylvania court granted plaintiff sole legal custody.  According to plaintiff's brief, on March 23, 2022,

---

[1]    We use initials for the child to protect his privacy and the confidentiality of the record.  R. 1:38-3(d)(13).

A-3750-23

the Pennsylvania courts entered an order stating there was no agreement between the parties as to Pennsylvania's continued jurisdiction over H.D.'s custody. Therefore, in May 2022, plaintiff moved for sole legal custody in New Jersey. In her application, plaintiff observed that defendant had visited H.D. only six to eight times over seven years since she had relocated to New Jersey. Plaintiff also alleged defendant had failed to provide adequate health insurance or fulfill his obligations to satisfy uncovered costs. Defendant cross-moved for enforcement of Pennsylvania's 2015 custody order, appointment of a reunification therapist, and relief related to the cost of the therapist and communication between the parties.[2]

The judge conducted a five-day hearing over various dates in 2023 and 2024. The parties were the only witnesses. Plaintiff testified regarding H.D.'s educational and medical needs and her commitment to his well-being. She recounted that defendant had rarely visited H.D. since their move to New Jersey. Defendant testified regarding his efforts to visit H.D. soon after his birth and in the period after plaintiff's move to New Jersey. He contended plaintiff had stymied his attempts to exercise his parenting time.

---

[2] Included in defendant's cross-motion was a request that child support be adjudicated in Pennsylvania. Neither that jurisdictional claim nor the judge's rulings on health-care coverage are subjects of this appeal.

A-3750-23

At close of testimony, the judge denied plaintiff's request for sole legal custody and granted the aspect of defendant's cross-motion seeking the appointment of a parenting coordinator to facilitate reunification of defendant and H.D. Among her findings, the judge determined plaintiff to be a "mostly incredible witness." Although plaintiff claimed to want H.D. and defendant to have a relationship, the judge found the evidence "belie[d] her testimony" and "overwhelmingly demonstrate[d] her disdain for . . . defendant in her calculated efforts to erase him from [H.D.]'s life." Those efforts included plaintiff's decision to move with H.D. to New Jersey.

By contrast, the judge found defendant to be a "mostly credible witness." His testimony was "impassioned with a clear recollection of events, dates, and conversations." Defendant elaborated in "copious detail" his efforts to spend time with H.D. and how those efforts were "thwarted" by plaintiff.

The judge found defendant had "served in a typical parental role for H.D. while he was an infant and domiciled in Pennsylvania." Plaintiff's relocation with H.D. had a "detrimental" effect on his relationship with defendant. Overall, the judge found defendant's explanation as to why he had not been actively involved in his son's life more convincing than plaintiff's assertions, which were "feeble and a lot less credible." She determined "plaintiff ha[d] unreasonably

obstructed defendant's ability to engage in parenting time with [H.D.]," constituting a violation of Pennsylvania's 2015 custody order.

After considering the parties' communications concerning H.D., the judge found they had exhibited an inability to cooperate. Absent intervention, the judge determined plaintiff likely would "unreasonably delay or hinder defendant's attempts to build a familial relationship with" H.D. Consequently, the judge appointed a parenting coordinator to implement a parenting plan fostering reunification between defendant and H.D.

The judge considered the statutory factors under N.J.S.A. 9:2-4, finding that although many of the statutory factors favored plaintiff, she could not ignore the "salutary precedent in avoiding a mechanical application of the statute." In considering the child's best interest, the judge concluded it was contrary to that interest and "manifestly unjust" for H.D.'s formative years to pass without him forming a familial relationship with defendant. The judge found that "[r]emoving defendant as a joint legal custodian of [H.D.] would sever the last tangible connection" in their already tenuous relationship. Because plaintiff had not demonstrated defendant unfit as a parent, the judge concluded joint legal custody to be appropriate.

A-3750-23

On appeal, plaintiff concedes that "joint legal custody is the norm/default in traditional cases," but maintains this is not a traditional case. She contends the "facts of this case cry out for a different outcome; namely that . . . [plaintiff] be awarded sole legal custody." Plaintiff asserts that although the judge addressed the statutory factors, she misinterpreted pertinent case law in concluding joint custody was appropriate. According to plaintiff, "children in a unified family setting develop attachments to both parents" and "joint custody seeks to maintain these attachments." Plaintiff argues that a joint custody arrangement is inappropriate because there is virtually no relationship between H.D. and defendant; therefore, there is no existing attachment to preserve.

Defendant maintains the judge correctly decided to establish "a true shared physical custody arrangement" consistent with presentation of substantive, credible evidence and based on well-established precedent that both parents are entitled to the rights and responsibilities of child rearing.

## II.

"Generally, the special jurisdiction and expertise of the family court requires that we defer to factual determinations if they are supported by adequate, substantial, and credible evidence in the record." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (citing Cesare v. Cesare,

154 N.J. 394, 413 (1998)). It is well settled that a Family Part judge's factfinding is entitled to "particular deference because of [the Family Part's] 'special jurisdiction and expertise in family matters.'" Ibid. (quoting Cesare, 154 N.J. at 413). The trial court's findings "will be disturbed only upon a showing that they are 'manifestly unsupported by or inconsistent with the competent, relevant, and reasonably credible evidence' to ensure there is no denial of justice." Ibid. (quoting Platt v. Platt, 384 N.J. Super. 418, 425 (App. Div. 2006)).

"A more exacting standard governs our review of the trial court's legal conclusions." Thieme v. Aucoin-Thieme, 227 N.J. 269, 283 (2016). "'Although a family court's factual findings are entitled to considerable deference, [the appellate court] do[es] not pay special deference to its interpretation of the law.'" Ibid. (quoting D.W. v. R.W., 212 N.J. 232, 245 (2012)). Accordingly, the trial court's legal conclusions are reviewed de novo. See ibid.

Custody

N.J.S.A. 9:2-4 governs child custody. In relevant part, it provides:

> it is in the public policy of this State to assure minor children of frequent and continuing contact with both parents after the parents have separated or dissolved their marriage[,] and that it is in the public interest to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy.

[N.J.S.A. 9:2-4.]

The statute further provides that "[i]n any proceeding involving the custody of a minor child, the rights of both parents shall be equal." Id. In addition, the statute states:

> In making an award of custody, the court shall consider, but not be limited to, the following factors: the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.
>
> [N.J.S.A. 9:2-4(c).]

In her legal analysis, the judge properly began with the premise that joint custody is appropriate, drawing from the equal rights of both parents to child rear, as provided in N.J.S.A. 9:2-4. "A parent shall not be deemed unfit unless . . . [his] conduct has a substantial adverse effect on the child." Ibid. In any

8

custody determination, the ultimate touchstone is the child's best interest. See Kinsella v. Kinsella, 150 N.J. 276, 317 (1997). The statute affords courts various options to further "the needs of children and their families: '[j]oint custody of a minor child to both parents,' '[s]ole custody to one parent with appropriate parenting time for the noncustodial parent,' and '[a]ny other custody arrangement as the court may determine to be in the best interests of the child.'" Bisbing v. Bisbing, 230 N.J. 309, 321 (2017) (alterations in original) (quoting N.J.S.A. 9:2-4(a)-(c)). In our jurisprudence, "[u]nder a joint custody arrangement[,] legal custody -- the legal authority and responsibility for making 'major' decisions regarding the child's welfare -- is shared at all times by both parents." Beck v. Beck, 86 N.J. 480, 486-87 (1981). The preferred disposition of a custody action is an award of joint physical and legal custody, consistent with the "legislative preference for custody decrees that allow both parents full and genuine involvement in the lives of their children." Id. at 485.

"If joint custody is feasible except for one or more of the[] practical considerations, the court should consider awarding legal custody to both parents with physical custody to only one and liberal visitation rights to the other." Id. at 500. Our Court has recognized that "the best interests of the child are disserved by many aspects of sole custody." Id. at 486.

We conclude the judge's decision to award joint legal custody was sound. In her analysis, the judge made detailed findings of fact and correctly applied the law. From careful review of those findings, we are satisfied they were "supported by adequate, substantial, and credible evidence in the record." Goldenberg, 428 N.J. Super. at 197. Most notably, the judge found plaintiff had not demonstrated defendant to be unfit.

Based on her observations of the witnesses' demeanor and testimony, the judge found plaintiff was largely responsible for defendant not "forming a familial relationship" with H.D. Specifically, the judge found plaintiff's unilateral removal of H.D. from Pennsylvania had a "detrimental" effect on his relationship with defendant. Even while in New Jersey, plaintiff initially agreed, then reneged on parenting time with defendant on multiple occasions, "unreasonably obstruct[ing]" his ability to engage in parenting time with H.D.

In sum, because there are no facts to support a finding either parent to be unfit, joint custody is appropriate and both parents are entitled to have continued contact with H.D. See Sacharow v. Sacharow, 177 N.J. 62, 81 (2003). There is, therefore, no reason to disturb the trial court's ruling on custody.

A-3750-23

Parenting Coordinator

Family Part judges have the authority to appoint qualified parenting coordinators to assist in the resolution of parenting conflicts with the parties' consent or upon good cause shown. See Goldenberg, 428 N.J. Super. at 205-06.

On appeal, plaintiff asserts the judge's appointment of a parenting coordinator was improper because there is no parenting plan in place for the coordinator to execute. Defendant argues the appointment was proper because the court is vested with discretion to facilitate parenting time, and the custody order and reunification therapy directive provide a framework the coordinator may utilize.

Applying our deferential standard of review, we determine the judge did not err in appointing a parenting coordinator. The judge made detailed findings of fact explaining why she found appointment of a parenting coordinator a "practical necessity," including the strained relationship between defendant and H.D., the parties' difficulty in communicating, and their geographical distance. Specifically, the judge reasonably found that although H.D. resides in New Jersey and defendant resides 100 miles away in Pennsylvania, a parenting plan affording defendant liberal visitation could be established and realized with the assistance of a parenting coordinator.

A-3750-23

The judge noted that although a child normally should have frequent and continuous contact with both parents, it would be a "traumatizing event" for H.D. to abruptly transition "from the arms of his mother into the arms of a man who, to the child, is a complete stranger." To address this latter concern, the judge ordered reunification therapy be conducted starting in a supervised setting to minimize harm to the child and ensure a proper reintroduction. We perceive no error in these rulings, which were based on the judge's credibility determinations made following a full hearing.

Where, as here, the judge articulates good cause for appointment of a parenting coordinator, the parties' consent is not required. Id. at 206. First, as stated, the judge properly ruled joint custody was appropriate based on her finding that neither parent was unfit and that maintaining a relationship with both parents was in H.D.'s best interest. Second, the judge's discretion to appoint a parenting coordinator was based on her findings demonstrating good cause for the appointment, namely the acrimony and geographical distance between the parties. As the judge stated:

> It is abundantly clear that without this [c]ourt's intervention, the formative years of [H.D.]'s life may pass without defendant and [H.D.] ever forming a familial relationship. That outcome would be manifestly unjust and contrary to the best interests of the child. It would also run afoul of the public policy

A-3750-23

and case law of this State, which imposes a duty on custodial parents to be active, and aiding and encouraging the sincere efforts of the non-custodial parent to enhance the mutual love, affection, and respect between himself and his child.

[(Citation omitted).]

We conclude there was no abuse of discretion in the appointment of a parenting coordinator.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

13

A-3750-23