**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2888-17T1
     A-4818-17T1
     A-0557-18T1

MARK J. MOLZ,

  Plaintiff-Appellant,

v.

THERESA D. MOLZ, n/k/a
THERESA D. MITCHELL,[1]

  Defendant-Respondent.

_____

    Argued telephonically[2] March 25, 2020 -
    Decided May 1, 2020

    Before Judges Fuentes, Mayer and Enright.

    On appeal from the Superior Court of New Jersey,
    Chancery Division, Family Part, Mercer County,
    Docket No. FM-11-0626-12.

    Mark J. Molz, appellant, argued the cause pro se.

---

[1] Defendant is referenced in the records using her former surname (Molz) and her current surname (Mitchell).

[2] https://www.njcourts.gov/notices/2020/n200315a.pdf

Andrew L. Rochester argued the cause for respondent (Morgenstern & Rochester, attorneys; Andrew L. Rochester, on the brief).

PER CURIAM

In these three appeals, consolidated for purposes of this opinion, plaintiff Mark J. Molz appeals from: (1) a January 24, 2018 final judgment of divorce (JOD) (Docket No. A-2888-17), challenging the trial court's awards of equitable distribution, alimony, and counsel fees to defendant Theresa D. Molz, and its decision not to establish a child support award; (2) a May 14, 2018 order (Docket No. A-4818-17), enforcing the JOD and issuing rulings pertaining to certain corporate entities held by one or both parties during the marriage;[3] and (3) a September 17, 2018 post-judgment order (Docket No. A-0577-18), holding plaintiff in contempt[4] and awarding additional counsel fees to defendant. We

---

[3] Plaintiff's civil case information statement under Docket No. A-4818-17 notes challenges to May 14, 2018 and June 25, 2018 orders, but his amended notice of appeal solely references the May 14, 2018 order.

[4] Although "contempt" proceedings may be properly commenced for a violation of a Family Part order, we are confident the motion leading to the entry of the September 17, 2018 order was based on Rule 1:10-3, rather than Rule 1:10-2. The court-appointed receiver who filed the enforcement motion, in fact, labeled his application as a "motion for enforcement of final judgment of divorce," and during oral argument, the trial court properly referred to the receiver's motion as an "application for enforcement." But the receiver engaged in the mistaken

2

now affirm the JOD, as well as the contested post-judgment orders, substantially for the reasons outlined in Judge Catherine Fitzpatrick's detailed and thoughtful opinions.

I.

We recite only those facts and procedural history relevant to these appeals. The parties were married on February 5, 1994. They have two daughters, who are now twenty-two and twenty-five years old. Judge Fitzpatrick determined defendant was the primary caretaker of the parties' children during the marriage.

Plaintiff is a practicing attorney and defendant began working at his law firm in 1994. She eventually became the firm's office manager but left this position shortly after plaintiff filed his divorce complaint in 2011. Although plaintiff filed for divorce in Burlington County, the parties agreed to transfer venue to Mercer County, as plaintiff's law practice was based in Burlington County.[5]

Plaintiff established his law practice prior to the parties' marriage. He also acquired certain real and personal property premaritally, including a home

---

use of the term, "contempt" elsewhere in his motion, and the trial court inadvertently adopted this misnomer in its September 17, 2018 order.

[5] The order transferring venue was not provided in the appellate record.

in Moorestown, a condominium in Barnegat, and numerous cars.  Some of plaintiff's premarital assets were purchased through corporate entities owned or controlled by him, including two airplanes (a 1975 Piper Archer and a 1973 Piper Seneca).  Further, plaintiff acquired two premarital annuities from a personal injury settlement which generated income to him in the approximate sum of $1919 per month.  Defendant testified at trial that marital funds were used to restore, maintain or improve some of plaintiff's premarital assets.  She also claimed the Moorestown and Barnegat homes were gifted to the marriage.

The parties engaged in extensive motion practice before and after the entry of the JOD.  The initial pendente lite order from April 2012 provided, in part:

> Defendant's motion to compel Plaintiff to deposit all funds that he receives from an annuity payment resulting from a personal injury settlement in[to] . . . the parties' joint bank account is granted.  Defendant is entitled to utilize the annuity payment of $914.00 per month for Schedule C expenses.  In addition, Plaintiff shall pay Defendant $250 per week ($1,000.00 per month) as temporary unallocated child and spousal support.  Plaintiff shall maintain all Schedule A and Schedule B expenses.
>
> . . . .
>
> Defendant's motion to compel Plaintiff to advance a sum of $30,000.00 for expert fees, [p]endente [l]ite attorney's fees and costs is denied.  Plaintiff shall use his best efforts to sell assets with a value of at least $30,000 within thirty . . . days of this

A-2888-17T1

[o]rder. Upon the sale of said assets, the parties shall split the proceeds 50-50 . . . to fund the costs of litigation, without prejudice to further allocation.

Plaintiff fell into arrears and, in January 2013, the trial court directed plaintiff to sell his 1967 Corvette to provide defendant pendente lite support and to fund $20,000 of her legal fees and costs. Also in January 2013, plaintiff filed a motion in limine seeking to "narrow the issues for [t]rial by eliminating assets from equitable distribution based upon [his] pre-marital ownership and/or the lack of financial contribution or purchase by [defendant], of shares of stock in business entities." This motion was resolved contemporaneous to the entry of the JOD. In November 2014, after the parties entered into a consent order for custody and parenting time, plaintiff filed a Mallamo[6] motion based on changed circumstances to vacate or adjust the pendente lite unallocated support he owed to defendant. This motion, too, was resolved on the same day the JOD was issued. Prior to trial, plaintiff filed a motion to vacate a bench warrant issued for his failure to pay court-ordered support. With the parties' consent, Judge Fitzpatrick vacated the bench warrant on the first day of trial.

The parties' seventeen-day trial commenced in January 2015 and concluded in May 2015. Each party testified extensively. Additionally, plaintiff

---

[6] Mallamo v. Mallamo, 280 N.J. Super. 8 (App. Div. 1995).

compelled the testimony of his accountant, a real estate appraiser, defendant's brother, and a former employee from his law firm. At the end of the trial, Judge Fitzpatrick was tasked with equitably distributing five pieces of real estate, three airplanes, over fifty vehicles, three boats, a sailboat and boat slip, jet skis, a law practice, furnishings, bank accounts and marital debt. Further, she addressed issues of support, insurance, counsel fees and other claims. Judge Fitzpatrick noted the parties' presentation of contradictory and incomplete financial information at trial challenged her ability to resolve these issues. She observed, "neither party presented current fair market value of any of their assets to include all real estate, the numerous automobiles, all airplanes, the sailboat and slip, . . . all other boats, ATV's, motorcycles, etc." Despite these circumstances, on January 24, 2018, Judge Fitzpatrick issued a final JOD, a comprehensive seventy-two-page opinion and an order denying plaintiff's outstanding motions as moot. We highlight only certain provisions of the JOD to give context to our decision.

Regarding equitable distribution, Judge Fitzpatrick traced the acquisition, use and improvement of various premarital and marital assets. She concluded the parties should share equally in the net equity of the parties' homes in Moorestown and Barnegat. She found plaintiff "gifted" both premarital homes

to the marriage. Next, she awarded plaintiff a 60% interest and defendant a 40% interest in certain other premarital assets owned by plaintiff. The judge found these assets had a "premarital component" but "significant improvements [were] made [to them] with marital funds throughout the marriage." Still other assets plaintiff owned premaritally were awarded to him without any credit to defendant. The judge found such assets were exempt from equitable distribution, defendant waived any claim to them, or defendant failed to demonstrate an incremental increase in their value. The judge also concluded "the debts and liabilities of the parties [are] essentially equal." She thus directed the parties to share equally in their marital credit card and Internal Revenue Service (IRS) debt. Lastly, she appointed a receiver to effectuate equitable distribution.

With respect to issues of support, Judge Fitzpatrick granted defendant limited duration alimony of $2500 per month for sixteen years, "less [a credit for] six years of pendente lite support." She also awarded defendant $50,000 in counsel fees. The judge relieved plaintiff of the obligation to satisfy arrears resulting from his failure to pay certain shelter and transportation expenses pendente lite but declined to adjust his arrearage for his direct monthly support obligations. In light of the alimony award, as well as the parties' incomes and

7

custody arrangement, the judge concluded no child support should be paid from one party to the other. However, she ordered the parties to share equally in the cost of the children's health insurance and unreimbursed health expenses. Neither party was directed to pay college expenses for the children.

Motion practice resumed within months after the JOD was rendered. On May 14, 2018, Judge Fitzpatrick granted defendant's motion to enforce litigant's rights and compelled plaintiff "to pay alimony on time and in full, and to cure his support arrears now totaling over $52,000." Plaintiff was ordered to send his annuity income to the Probation Department to offset his arrears and ongoing alimony obligations. Judge Fitzpatrick also suspended plaintiff's boating and pilot's licenses, because of his "willful failure to pay support."

On June 25, 2018, plaintiff appealed from the May 14, 2018, order and later amended his notice of appeal in response to a deficiency notice. Also on June 25, 2018, Judge Fitzpatrick granted a motion by the court-appointed receiver to list the parties' Barnegat condo for sale.[7] The June 25 order provided that if plaintiff could not purchase defendant's interest in the condo, it would be immediately listed for sale and plaintiff had to provide the receiver with keys to the property. The June 25 order also required plaintiff "to pay all carrying costs

---

[7] The record does not include this motion to enforce.

. . . associated with [all of] the properties for as long as plaintiff retains access to the marital properties referenced in the parties' [JOD]."  Additionally, the judge confirmed the receiver's authority to "immediately sign a listing agreement for the sale of the [parties'] sailboat and boat slip," and compelled plaintiff "to provide the keys, title documents, maintenance history and liability statements for the sailboat and the boat slip," as well as "evidence as to the sailboat's ownership," including "proof of the shareholders and officers of the sailboat[, which] is owned by a corporation or other business entity."  Further, plaintiff was directed to provide the receiver with title to all motor vehicles, provide "unfettered access" to them, and  deliver "a certification to the [c]ourt and all parties as well as the [r]eceiver as to where all the cars, listed in the final divorce decree, are currently located."  Moreover, plaintiff was directed to give the receiver access to all airplanes, "with notice to any other owners of the airplanes, as well as all titles and other documentation [the receiver] requested."

The receiver asserted in a July 2018 enforcement motion that plaintiff refused to abide by the May 14, 2018 and June 25, 2018 orders.  He certified plaintiff "retains possession and control over the marital assets, including but not limited to the five . . . parcels of real property, planes, boats, numerous vehicles, equipment, and personalty."  According to the receiver, plaintiff

"failed and refused to provide access, title documents and maintenance records, which are necessary to efficiently inventory and sell the marital assets." The receiver specified that plaintiff: (1) "did not identify the location of the planes, many of the vehicles, and did not supply titles or keys to vehicles that third parties had offered to purchase;" (2) "did not respond to telephone calls or emails for extended periods of time;" (3) "did not maintain the marital assets in good and marketable condition;" and (4) failed to provide the court-ordered certification revealing the location of vehicles. The receiver added, "it appears that [plaintiff] may be hiding certain vehicles, planes, and equipment to avoid marketing and sale of same."

Judge Fitzpatrick conducted oral argument on the receiver's motion and defendant's separate enforcement motion on September 12, 2018. She declined to consider a cross motion filed by plaintiff in late August 2018, because it was not timely filed, and rescheduled his cross motion to a return date in October 2018. Still, the judge agreed to consider plaintiff's opposition in relation to the pending enforcement motions.

At the September 12 hearing, the receiver claimed "[plaintiff has] done nothing but continue to violate the [c]ourt's orders, violate the judgment of the [c]ourt and play games with regards to any efforts we've had . . . to selling

assets." He added: "In the May [14] order . . . [plaintiff] was ordered to pay . . . arrears in [the amount of] $52,000. As far as I know, there's been no efforts whatsoever to make that payment," and "[w]ith regard to the order of the [c]ourt on our motion back in June, [plaintiff] continues to just ignore the [c]ourt's orders again." Referencing the need to sell the parties' sailboat, the receiver explained plaintiff "still hasn't filed the tax returns, so when we had the buyer, there's an issue with transferring title because the [parties'] LLC, which is probably a sham anyway, . . . [i]s not in good standing." The receiver also stated, "[plaintiff] ha[d] the sole possession and exclusive control over these assets . . . [a]nd he also ha[d] the legal documents underlying these things, such as the titles and . . . the so[-]called shareholders in these corporations that [were] supposed to own the planes and things of that nature." The receiver concluded, "this entire process has been wasting the [c]ourt's time, my time and [defendant] sits on the sidelines not getting paid for any of the marital assets as [plaintiff] continues to exercise sole control and power over them."

With respect to plaintiff's support arrears, the receiver claimed the proceeds from the sale of the Barnegat condo would be insufficient to satisfy same. The receiver proposed revisiting the arrearage issue on the return date of plaintiff's cross motion. Defendant's counsel agreed to this proposal.

Plaintiff participated in the September 12 hearing. Regarding the sale of the Barnegat condo, he stated: "I did everything the contract required of me in connection with Barnegat and I don't have a deed and I don't have clear title and it's months later and no one was willing to sit down at a table." The receiver responded: "That's an absolute lie, your Honor, so you know, enough is enough. Absolute lie."

On September 17, 2018, Judge Fitzpatrick issued a written order, accompanied by an oral decision. She found plaintiff had not complied with provisions of the JOD and her June 25, 2018 order and specifically concluded he refused to cooperate with the receiver. She also ordered the closing on the Barnegat property to occur within a week and directed defendant to receive one-half of the net proceeds from the sale, with plaintiff's share of the net proceeds to be applied to certain closing costs and his support arrears. Additionally, the judge granted defendant a limited power of attorney to transfer all equitably distributed assets without the necessity of obtaining plaintiff's permission or signature, and compelled plaintiff to be responsible for the receiver's fees and costs on his enforcement application. Judge Fitzpatrick reserved decision on credits due plaintiff against his support arrears, pending receipt of a certification from defendant which itemized the annuity payments she received from

plaintiff.  Lastly, the judge granted defendant a partial counsel fee award of $1340.

## II.

We first address plaintiff's appeal from the JOD.  To the extent plaintiff failed to adequately brief the various arguments he raised, there is no need to substantively discuss them (e.g., plaintiff's claims regarding marital debt and counsel fees).  See Weiss v. Cedar Park Cemetery, 240 N.J. Super. 86, 102 (App. Div. 1990) ("The failure to adequately brief [an issue] requires it to be dismissed as waived.").

Regarding the JOD, plaintiff argues the trial judge abused her discretion by: (1) allowing defendant to share in certain assets, including premarital assets and assets belonging to corporate entities; (2) imposing an alimony obligation; (3) failing to establish a child support award; (4) granting defendant counsel fees; and (5) failing to properly allocate marital debt.  Having carefully considered these arguments, we are satisfied they lack merit.

"[W]e accord great deference to discretionary decisions of Family Part judges," Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family matters." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010)

13

(quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). We are bound by the trial court's factual findings so long as they are supported by sufficient credible evidence. N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007) (citing In re Guardianship of J.T., 269 N.J. Super. 172, 188 (App. Div. 1993)). Deference is especially appropriate when the case turns, as this one did, on questions of credibility. Cesare, 154 N.J. at 412-13. However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Hitesman v. Bridgeway, Inc., 218 N.J. 8, 26 (2014) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Equitable Distribution

"A Family Part judge has broad discretion in . . . allocating assets subject to equitable distribution," Clark v. Clark, 429 N.J. Super. 61, 71 (App. Div. 2012), and in determining the manner of distribution. Steneken v. Steneken, 367 N.J. Super. 427, 435 (App. Div. 2004), aff'd in part, modified in part on other grounds, 183 N.J. 290 (2005). An appellate court will affirm an award of equitable distribution provided "the trial court could reasonably have reached its result from the evidence presented, and the award is not distorted by legal or factual mistake." La Sala v. La Sala, 335 N.J. Super. 1, 6 (App. Div. 2000).

A-2888-17T1

"[T]he goal of equitable distribution . . . is to effect a fair and just division of marital assets." Steneken, 183 N.J. at 299 (quoting Steneken, 367 N.J. Super. at 434). In a divorce action, "the court may make such award or awards to the parties, in addition to alimony and maintenance, to effectuate an equitable distribution of the property, both real and personal, which was legally and beneficially acquired by them or either of them during the marriage or civil union." N.J.S.A. 2A:34-23(h). The statute is to be construed to "recognize that marriage is 'a shared enterprise, a joint undertaking, that in many ways . . . is akin to a partnership.'" Weiss v. Weiss, 226 N.J. Super. 281, 287 (App. Div. 1988) (quoting Smith v. Smith, 72 N.J. 350, 361 (1977)).

When distributing marital assets, a court must identify the property subject to equitable distribution, determine the value of each asset, and decide how to allocate each asset most equitably consistent with the statutory factors. Rothman v. Rothman, 65 N.J. 219, 232 (1974). "In general, the court divides only that portion of the asset that was 'legally or beneficially acquired' during the marriage." Barr v. Barr, 418 N.J. Super. 18, 33 (2011) (citing N.J.S.A. 2A:34-23(h)).

On the other hand, typically, "[a]ny property owned by a husband or wife at the time of marriage will remain the separate property of such spouse and in

15

the event of divorce will be considered an immune asset and not eligible for distribution." Valentino v. Valentino, 309 N.J. Super. 334, 338 (App. Div. 1998). The burden of establishing that an asset or any portion thereof is immune from distribution rests on the party claiming its immunity. Pacifico v. Pacifico, 190 N.J. 258, 269 (2007). But "[p]roperty 'clearly qualifies for distribution' when it is 'attributable to the expenditure of effort by either spouse' during marriage." Pascale v. Pascale, 140 N.J. 583, 609 (1995) (quoting Painter v. Painter, 65 N.J. 196, 214 (1974)). Further, all property, regardless of its source, in which a spouse acquires an interest during the marriage, is eligible for distribution in the event of divorce. Painter, 65 N.J. at 217. Indeed, interspousal gifts are subject to equitable distribution under N.J.S.A. 2A:34-23(h). Hence, we have continuously held that when a party owns real property premaritally but during the marriage executes a deed, giving a spouse an interest in that property, the elements of a gift are met and the property becomes subject to equitable distribution. Pascarella v. Pascarella, 165 N.J. Super. 558, 564 (App. Div. 1979).

When a court determines how to divide marital assets, there is no presumption the assets should be distributed equally. Rothman, 65 N.J. at 232 n.6; Wadlow v. Wadlow, 200 N.J. Super. 372, 377 (App. Div. 1985). However,

16

it is presumed that "each party to a marriage . . . contributes to the enterprise that produces an accumulation of property." Perkins v. Perkins, 159 N.J. Super. 243, 247 (App. Div. 1978). "Although the acquisition of property may be traced more directly to one partner than another, the distribution should reflect non-pecuniary as well as pecuniary contributions to the marriage." Ibid. Guided by these various principles, we perceive no basis to second-guess Judge Fitzpatrick's equitable distribution of the parties' assets and debts.

Notwithstanding plaintiff's arguments to the contrary, we are satisfied Judge Fitzpatrick's decision to provide defendant with a one-half interest in plaintiff's premarital Moorestown and Barnegat properties was appropriate. Plaintiff does not dispute that defendant's name was placed on the deed to each property early in the parties' marriage. It also is uncontroverted that the Moorestown property became the marital residence and the parties built an addition to that home during the first five years of their marriage. After a 2006 fire caused extensive damage to the dwelling, the parties rebuilt the home with the help of defendant's brother. The judge found "the marital home has been completely redesigned and there is nothing left of the original Cape Cod that the plaintiff purchased back in 1975." She also found defendant was named on the deed to the Barnegat condo as of March 1995 so that the property had been gifted

to the marriage. The record fully supports Judge Fitzpatrick's finding that "plaintiff's donative intent was explicit in the execution of all deeds of conveyance to the defendant."

Plaintiff next argues Judge Fitzpatrick "erred in ordering division of [c]orporate assets . . . without factual or legal basis," and that corporate entities were denied "due process," because they were not named parties in this litigation and there was "no venue in Mercer County." He specifically claims defendant should not share in the assets of corporate entities held during the marriage, including: CJ Adventures, LLC (CJ); Shan-Mar, Inc.; 1400 Route 38 Real Estate Investments; 1402 Route 38 Real Estate Investments; and 2004 Route 38 Associates. We are not persuaded.

Assets are not immune from equitable distribution simply because they are owned by a corporate entity. Scherzer v. Scherzer, 136 N.J. Super. 397, 400 (App. Div. 1975). Indeed, business assets, including those held in corporate form or as a sole proprietorship, are subject to equitable distribution. Ibid.

Consistent with these principles, Judge Fitzpatrick ordered the parties to sell their 50% interest in a Nanchung CJ-7 plane (which was purchased by CJ in 2003 and was the entity's sole asset). The parties were directed to equally divide any net proceeds from the sale after paying any amounts owed to the third-party

co-owner and other creditors. The judge found plaintiff was CJ's "managing member." Similarly, the judge directed the parties to sell and share equally in the proceeds from their sailboat and boat slip, both of which were purchased in 2002 by Shan-Mar, Inc., as she found this entity was incorporated by the parties during the marriage. There is no reason to second-guess these or other rulings involving the parties' marital corporate entities.

We note the trial judge also granted defendant a 40% interest and plaintiff a 60% interest in the net value of plaintiff's two premarital planes (owned by Alpha Aeronautics and Snow Enterprises), as well as some of plaintiff's premarital older model cars. In doing so, the judge recognized a "premarital component" to these assets. Still, plaintiff maintains the judge had no authority to equitably distribute his premarital planes or cars. His claim of error, in part, arises from his contention that defendant "lied" about using marital funds to maintain his premarital assets. We defer to Judge Fitzpatrick's factual and credibility findings in this regard.

A trial judge who observes witnesses and hears their testimony develops "a feel of the case" and is best qualified to "make first-hand credibility judgments about the witnesses who appear on the stand." N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008). As there is overwhelming evidence

19

to support Judge Fitzpatrick's finding that defendant's testimony regarding the expenditure of marital funds to improve, maintain and restore plaintiff's premarital assets was credible, we will not disturb the judge's equitable distribution rulings. Plaintiff simply failed to meet his burden of proof to establish that any premarital or corporate assets were immune from distribution. Pacifico, 190 N.J. at 269.

Alimony

Plaintiff contends the trial judge erred by awarding defendant alimony after "imputing three times [defendant's] salary to [him] without regard to historical earnings and losses due to the economic downturn." He also argues the judge neglected to credit him with payments against his pendente lite arrears. Such arguments are belied by the record.

Judge Fitzpatrick ordered plaintiff to pay limited durational alimony in the amount of $2500 per month for a period of sixteen years. In doing so, she explicitly credited him with six years of pendente lite support payments (except for his outstanding direct support payments) and noted he would have to pay alimony for a period of ten years, effective with the entry of the JOD. The judge noted "[n]either party calculated for the court[] the amount of pendente lite support the plaintiff actually paid pursuant to [the pendente lite] order up

A-2888-17T1

through the date of trial." Nonetheless, Judge Fitzpatrick relieved plaintiff from having to satisfy certain shelter and transportation expenses he owed under the pendente lite order.

When fixing an alimony figure, the judge accepted defendant's current lifestyle expenses as "credible and reasonable," adding that "perhaps in the 'good years' . . . the marital lifestyle expenses were in the area of $15,000.00 to $20,000.00 per month, but the good years have since passed." The judge also determined defendant earned a salary of $60,000 per year, and that plaintiff could earn $150,000 gross income per year. To reach these conclusions, Judge Fitzpatrick thoroughly analyzed the evidence presented against the relevant statutory factors, N.J.S.A. 2A:34-23(b). She confirmed the statutory factor involving the actual need and ability of the parties was "the most difficult factor for this [c]ourt to analyze based upon the incredible testimony presented." The judge explained:

> A comparison of the parties['] CIS[s] demonstrates to this court that the plaintiff's marital lifestyle figures are woefully low, in an attempt to limit his exposure to alimony and are not credible.
>
> . . . .
>
> Likewise, the [c]ourt found plaintiff['s] testimony as to what he can and did earn to be incredible.

21

. . . .

> With regard to the earning capacity for the plaintiff, clearly he can earn more than $75,000 per annum. His wife currently makes $60,000 per annum as a paralegal. The plaintiff has been a practicing attorney for over 26 years and to suggest that he can only make $15,000 more per year, [than] his wife is not to be believed.

> . . . .

> Plaintiff is an attorney and officer of the court. He has an obligation to maintain his attorney business and trust account, to report all income and to provide all discovery requested in his personal divorce litigation. He failed to do so and this court imposes a negative inference against the plaintiff with respect to his true income and his ability to earn.

> . . . .

> Plaintiff continued for years buying all types of automobiles, trucks, machinery, boats, motorcycles, dirt bikes, ATVs without a care in the world . . . . Clearly, he used cash to buy much of his collection of automobiles, etc., as there was no proof provided as to how he attained all of these assets by way of checks or credit card payments. None.

Family courts have great latitude in crafting alimony awards. Steneken, 367 N.J. Super. at 434. The "goal of a proper alimony award is to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage."

22

Crews v. Crews, 164 N.J. 11, 16 (2000). Thus, "alimony is neither a punishment for the payor nor a reward for the payee." Mani v. Mani, 183 N.J. 70, 80 (2005). Rather, it is "an economic right that arises out of the marital relationship and provides the dependent spouse with 'a level of support and standard of living generally commensurate with the quality of economic life that existed during the marriage.'" Ibid. (quoting Stiffler v. Stiffler, 304 N.J. Super. 96, 99 (Ch. Div. 1997)). "The supporting spouse's obligation is set at a level that will maintain that standard." Innes v. Innes, 117 N.J. 496, 503 (1990); see also Hughes v. Hughes, 311 N.J. Super. 15, 31 (App. Div. 1998) ("Bare survival is not the proper standard, it is the quality of the economic life during the marriage that determines alimony.").

Alimony awards are not disturbed on appeal if the trial judge's conclusions are consistent with the law and not "manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Foust v. Glaser, 340 N.J. Super. 312, 316 (App. Div. 2001). The question is whether the trial judge's factual findings are supported by "adequate, substantial, credible evidence" in the record and the judge's conclusions are in accordance with the governing principles. Ibid.

"A trial judge's decision to impute income of a specified amount will not be overturned unless the underlying findings are inconsistent with or unsupported by competent evidence." Storey v. Storey, 373 N.J. Super. 464, 474-75 (App. Div. 2004). "Imputation of income is a discretionary matter not capable of precise or exact determination but rather requiring a trial judge to realistically appraise capacity to earn and job availability." Id. at 474.

Here, Judge Fitzpatrick's findings regarding the need to impute income to plaintiff and defendant's need for alimony are well anchored in the record. Further, she was free to draw a negative inference regarding plaintiff's earning capacity and ability to pay alimony, considering his failure to provide reliable financial information to the court. Hence, the alimony award will not be disturbed.

Child Support

Plaintiff contends the court erred by failing to require defendant "to pay child support or contribute to the college education of her two children." Although neither party is obligated to make a child support payment to the other under the terms of the JOD, paragraph twenty of the judgment plainly directs each party to be solely responsible for the children's costs while in that party's care. Judge Fitzpatrick explained, "[i]n light of the alimony award . . . and the

respective incomes of the parties, . . . no child support should be paid from one party to the other as the parties agreed to share joint legal and physical custody of their two daughters."   Regarding college education issues, the judge confirmed at paragraph twenty-one of the JOD:

> The [c]ourt makes no findings with regard to the parties contributing towards their children's college expenses as same was not addressed by either party during trial [with the exception of one tuition bill being marked as a trial exhibit].  Neither party addressed the factors under Newburgh v. Arrigo,[8] and thus the court makes no findings with regard to contribution toward college.

Plaintiff's argument that the trial judge should have calculated a child support figure is both confusing and disingenuous.  He specifically conceded at trial he was not seeking a direct payment of child support.  Also, neither party provided Judge Fitzpatrick with sufficient information to address the need for a college contribution.  Since this issue was not properly raised at trial, we need not consider it.  See Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973) (appellate courts may decline "to consider questions or issues not properly presented to the trial court").

---

[8]  88 N.J. 529 (1982).

Nonetheless, a trial court's "'[child support] award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice.'" J.B. v. W.B., 215 N.J. 305, 326 (2013) (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)). No such arbitrariness exists here, as to child support or college expenses.

Counsel Fees

Plaintiff failed to adequately brief his argument regarding the $50,000 counsel fee award set forth in the JOD. See Weiss v. Cedar Park Cemetery, 240 N.J. Super. at 102 ("The failure to adequately brief [an issue] requires it to be dismissed as waived."). In fact, he does not explain how the judge erred by granting counsel fees. It is not this court's obligation to speculate about the underlying reasons for plaintiff's position or to construct his arguments for him. See Miller v. Reis, 189 N.J. Super. 437, 441 (App. Div. 1983) (issues not briefed beyond conclusory statements need not be addressed).

Even if plaintiff's brief was not deficient, we are convinced there is no basis to overturn Judge Fitzpatrick's counsel fee award. The assessment of attorney's fees is an issue left to the sound discretion of the trial court. Tannen v. Tannen, 416 N.J. Super. 248, 285 (App. Div. 2010) aff'd o.b., 208 N.J. 409,

26

410 (2011). "We will disturb a trial court's determination on counsel fees only on the rarest occasion, and then only because of clear abuse of discretion." Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008). Counsel fees may be awarded when a party has unnecessarily prolonged the litigation. Marx v. Marx, 265 N.J. Super. 418, 429 (Ch. Div. 1993).

Here, the judge found plaintiff acted in bad faith, failed to meet his discovery obligations and needlessly prolonged the trial. As she explained, plaintiff's "disingenuous" positions "caused counsel fees to be incurred unnecessarily, which the court took into consideration when awarding counsel fees to the defendant." As Judge Fitzpatrick appropriately analyzed the factors under Rule 5:3-5(c), the New Jersey Rule of Professional Conduct 1.5(a), and N.J.S.A. 2A:34-23, we are satisfied she did not abuse her discretion in awarding defendant counsel fees. Rendine v. Pantzer, 141 N.J. 292, 317 (1995).

Marital Debt

Plaintiff asserts the trial judge neglected to equitably distribute marital debt, arguing "[t]he trial court's decision does not address the roughly $150,000 in short term payables left by [defendant]." Again, plaintiff failed to adequately brief this issue. Weiss v. Cedar Park Cemetery, 240 N.J. Super. at 102. He does not explain how the judge erred and cites to no provision in the JOD or legal

authority to support his argument. Even so, we note that the JOD and its accompanying opinion discuss marital debt. Paragraph thirty-three of the JOD states: "all marital credit card debt existing on the date of the filing complaint and all subsequent interest incurred on said debt shall be divided equally between the parties . . . . This shall include any debts owed to the IRS." Judge Fitzpatrick's written opinion also states, "the debts and liabilities of the parties [are] essentially equal," but she noted defendant incurred counsel fees "in excess of $103,000," whereas plaintiff failed to "testify as to any counsel fees he may have outstanding at the time of trial." Under these circumstances, we perceive no basis to second-guess the marital debt allocation set forth in the JOD.

III.

Post-Judgment Orders

Plaintiff formally appeals from the May 14, 2018 and September 17, 2018 orders. He also claims the June 25, 2018 order was improvidently entered.[9] There is no need to review every provision of these orders. It is sufficient to note the May 14, 2018 order compelled plaintiff to make timely alimony

---

[9] Only those judgments or orders designated in the notice of appeal are subject to the appeal process and review. R. 2:5-1(e)(3)(i) (requiring the notice of appeal to "designate the judgment, decision, action or rule, or part thereof . . . from . . . which the appeal is taken.").

payments and cure his support arrears, directed him to send his premarital annuity funds to the Probation Department in that effort, and suspended his pilot's and boating licenses. The June 25, 2018 order granted the receiver's request to list the Barnegat condo for sale, required plaintiff "to pay all carrying costs . . . associated with [all of] the properties for as long as plaintiff retains access to the marital properties referenced in the parties' [JOD]," and compelled plaintiff "to provide a certification to the [c]ourt and all parties as well as the [r]eceiver as to where all the cars, listed in the final divorce decree, are currently located."

The September 17, 2018 order, in part, found defendant violated the JOD and the June 25, 2018 order, and awarded defendant counsel fees. Judge Fitzpatrick outlined plaintiff's violations, explaining:

> [P]laintiff failed to file a certification as previously ordered to have been done within seven days of June 25 . . . advising the [receiver of] the location and information concerning assets; more particularly, the cars, boats, planes, ATVs, et cetera . . . . In addition, no further payments have been made to . . . defendant with regard to alimony.
>
> . . . .
>
> This [c]ourt is satisfied that [plaintiff] has unfortunately continued his course of obstreperous and retaliatory conduct toward his ex-wife. This [c]ourt is satisfied from [the receiver's] . . . argument and

certification that while things started out being somewhat cordial, [plaintiff] then stopped returning phone calls to [the receiver], didn't answer e-mails, although [plaintiff] says he doesn't know how to do e-mails. He wants everything via letter correspondence, which is ridiculous.

. . . .

But he has been uncooperative . . . . [plaintiff] believes somehow that he is above following court orders, . . . and [he] has been walking a fine line . . . taking liberties with language and court orders and giving excuse after excuse . . . why certain things weren't done.

"Rule 1:10-3[10] allows a court to enter an order to enforce litigant's rights commanding a disobedient party to comply with a prior order" or face sanctions. Milne, 428 N.J. Super. at 198. Further, Rule 5:3-7, which is cross-referenced in Rule 1:10-3, offers useful remedies to coerce a recalcitrant litigant. Such

---

[10] Rule 1:10-3 provides, in relevant part:

Notwithstanding that an act or omission may also constitute a contempt of court, a litigant in any action may seek relief by application in the action. A judge shall not be disqualified because he or she signed the order sought to be enforced . . . . The court in its discretion may make an allowance for counsel fees to be paid by any party to the action to a party accorded relief under this rule. In family actions, the court may also grant additional remedies as provided by R. 5:3-7.

A-2888-17T1

remedies are tailored to address the needs and issues raised in family court proceedings (e.g., allowing the imposition of economic sanctions and the suspension of an occupational license or driver's license consistent with law).

"Once the court determines the non-compliant party was able to comply with the order and unable to show the failure was excusable, it may impose appropriate sanctions." Ibid. Such sanctions "are intended to coerce a party's compliance." Ibid. However, "[w]hen the relief sought is the enforcement of an order, and not punitive or coercive relief, there is no 'willfulness' requirement." Pressler & Verniero, Current N.J. Court Rules, cmt. 4.3 on R. 1:10-3.

Plaintiff contests the enforcement mechanisms employed by Judge Fitzpatrick to enforce her orders and also disagrees with her findings. Additionally, he asserts he did not receive credit for payments he made toward the Barnegat condo, nor payments he made to defendant from his annuities. Further, he claims the judge erroneously awarded defendant counsel fees when enforcing her prior orders. Finally, in Point IV of his brief, he asserts that "[p]aragraphs 3, 4, 5, 6, 8, 9, 10, 12, 13, 16, 17, 18, 19, 20, and 22" of the September 17, 2018 order "are not supported by findings of fact and conclusions of law and must be vacated." He fails to pinpoint specific claims of error for

31

this particular argument. Because plaintiff fails to adequately brief Point IV of his argument relative to the September 17, 2018 order, it is waived. State v. Hild, 148 N.J. Super. 294, 296 (App. Div. 1977). Again, we owe no obligation to plaintiff to construct his arguments. See Miller, 189 N.J. Super. at 441.

In any event, the record overwhelmingly supports Judge Fitzpatrick's decision to hold plaintiff in violation of litigant's rights and enforce her prior orders. Plaintiff provides no legitimate explanation for his refusal to cooperate with the receiver and turn over keys and title certificates, as well as provide the receiver with access to vehicles so they could be sold, consistent with the JOD and subsequent orders. He also does not dispute he failed to timely submit a certification regarding certain assets, as directed in Judge Fitzpatrick's June 25, 2018 order. His obstreperous behavior and indefensible defiance of judicial authority understandably frustrated the receiver's ability to market and sell assets to effectuate equitable distribution. Consequently, we are confident the judge's decision to suspend plaintiff's boating and pilot's licenses was a proper, measured exercise of her discretionary authority.[11] Such suspensions are specifically allowed by statute and court rule. See N.J.S.A. 2A:17-56.41 to -62

---

[11] Although plaintiff claims the court also erred by suspending his passport, the May 14, 2018 order suspending his Federal Aviation Administration pilot's license and his boating license makes no mention of a passport suspension.

and R. 5:3-7(b). Similarly, we are satisfied the September 17, 2018 order properly awarded defendant counsel fees pursuant to Rule 1:10-3, given plaintiff's violations of Judge Fitzpatrick's orders.

We also give no credence to plaintiff's claim that Judge Fitzpatrick neglected to credit him in the September 17, 2018 order with certain payments he made to benefit defendant. He does not itemize any alleged overpayments for support, nor attempt to calculate additional credits claimed. Further, Judge Fitzpatrick, the receiver and defendant's attorney acknowledged during oral argument on September 12, 2018 that plaintiff might be due credits (e.g., for annuity payments remitted toward his support obligation), but any decision on such credits would abide the October 2018 return date of defendant's untimely cross motion.

Plaintiff's remaining arguments, as well as his request for Judge Fitzpatrick's recusal, due to an unsupported claim she harbored a bias against him, are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). That the judge found plaintiff an unreliable witness who repeatedly offered testimony she deemed incredible does not equate to bias. See Strahan, 402 N.J. Super. at 318 ("Bias cannot be inferred from adverse rulings against a party.").

In sum, we perceive no basis to question Judge Fitzpatrick's decisions. She clearly appreciated her role in making detailed credibility and factual findings, <u>Rule</u> 1:7-4(a), as she examined a myriad of legal issues. Despite the challenges she faced, Judge Fitzpatrick properly applied the law to her findings and demonstrated a superior level of diligence and patience that shines through the pages of this record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2888-17T1