# **RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3456-19T3

V.A.F.,

    Plaintiff-Appellant,

v.

R.J.G.,

    Defendant-Respondent.

_____

Argued November 17, 2020 – Decided December 22, 2020

Before Judges Fisher and Gummer.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FD-02-0193-15.

Philip Petrullo argued the cause for appellant (Russo Petrullo Law Group, LLC, attorneys; Philip Petrullo on the brief).

R.J.G., respondent, argued the cause pro se.

PER CURIAM

Plaintiff V.A.F. (Valerie)[1] appeals the judge's decision to deny her custody-modification motion without first conducting a plenary hearing. Because we agree with the judge's conclusion that plaintiff failed to demonstrate changed circumstances warranting a plenary hearing, we affirm.

This action was initially filed by Valerie in 2014 when the parties' daughter A.G. (Anna) was approximately fifteen-months old. As memorialized in a September 11, 2014 order, defendant R.J.G. (Richard) acknowledged paternity, and the parties agreed to a parenting-time arrangement. About two years later, the parties reached a new agreement regarding parenting time, which was detailed in an August 10, 2016 consent order.

Within a year, Valerie moved for sole custody. In an August 1, 2017 order, the judge denied that application, declined to modify parenting time, denied Valerie's request to impose supervised visitation, and ordered that certain medical and diagnostic evaluations be performed. As set forth in a December 6, 2017 order, the parties subsequently agreed to share joint legal custody of Anna, with Valerie being the parent of primary residence and Richard having regular weekly parenting time.

---

[1] We use initials and fictitious names for ease of reading and to protect the identities of the parties. R. 1:38-3(d)(12).

Six months later, this case was before the court again. On June 7, 2018, the judge ordered the parties to comply with the December 6, 2017 order. The parties agreed to meet with Anna's therapist and were directed to follow her recommendations.

After another six months passed, the court considered a new application filed by Valerie. In a December 18, 2018 order, the judge suspended one day of Richard's weekly parenting time until he cooperated with a therapist's recommendations but otherwise enforced all prior orders.

The case was before the court again the following spring. After Anna told her therapist that her paternal uncle had sexually abused her, the parties agreed in a June 25, 2019 consent order that Anna would not have any contact with that uncle. The authorities who investigated that allegation ultimately concluded that no sexual abuse had occurred.

Not long after that allegation, Anna, who was then over six-years old, told a case worker that Richard had touched her sexually when she was one-, two-, or three-years old. The judge on July 10, 2019, suspended Richard's overnight parenting time, required that his other parenting time be supervised by his fiancé, and ordered him to obtain a best-interest evaluation and that the matter

A-3456-19T3

be relisted upon completion of a Division of Child Protection and Permanency (DCPP) investigation.

The matter was relisted on December 3, 2019. The parties reviewed the DCPP report, and, consistent with the recommendations of Daniel Bromberg, PhD, a psychologist to whom DCPP had referred the case for evaluation, the judge ordered that DCPP arrange for therapeutic reunification sessions between Richard and Anna.

Before a single reunification session was scheduled, Valerie filed an application for a modification of a January 15, 2020 order,[2] seeking "sole legal and physical custody" of Anna and to suspend Richard's parenting time "until further order of the court."[3] Valerie stated that she sought that modification because "continued contact with [Richard] is detrimental to [Anna's] well-being.

---

[2] Valerie did not provide a copy of the January 15, 2020 order on which she based her modification application and did not discuss it in the brief. The judge did not reference the January 15, 2020 order in his March 31, 2020 order or his amplification of his order. We assume that Valerie mistakenly referenced a non-existent January 15, 2020 order in the application and intended to base the modification motion on the December 3, 2019 order.

[3] Valerie also asked the judge to enforce Richard's child-support obligations and to order Richard to pay a lump sum of $1000 towards arrears within thirty days or face issuance of a bench warrant and her counsel fees and costs in bringing the motion.

A-3456-19T3

It is in her best interests that I be granted sole legal and physical custody." She supported that assertion with only her certification.

In her certification, Valerie stated that she had retained Curtis W. Branch, PhD, to conduct an evaluation in the fall of 2019. According to Valerie, Dr. Branch issued a report in which he opined that it was in Anna's best interest that Valerie "parent her on a full-time basis minus the animus and discord that seems to have plagued co-parenting arrangements with [Richard]" and recommended that Valerie be granted sole custody. In her certification, Valerie also referenced a letter from Anna's "trauma counselor," in which, according to Valerie, the counselor described Anna's "marked improvement since contact with [Richard] was suspended." Valerie did not provide a copy of the report or the letter to the court but offered to make them available. She did not mention in her certification the allegations of abuse by Richard or his brother.

Valerie's motion was heard by the same judge who had issued the December 3, 2019 order and two prior orders in the case. In a March 30, 2020 letter to the judge, DCPP representatives stated that DCPP was closing its case "as there are no concerns of Child Abuse and Neglect." They also indicated that DCPP had assisted Richard in arranging for therapeutic visitation, presumably pursuant to the December 3, 2019 order, but that the visitation had not yet begun

through no fault of Richard. DCPP relied on recommendations contained in a new evaluation prepared by Dr. Bromberg. Concluding that Valerie's actions had contaminated information regarding Richard's alleged abuse of Anna and that evidence supporting that allegation was highly suspect, Dr. Bromberg recommended, among other things, that the therapeutic supervised visits between Richard and Anna, which he previously had recommended, begin as soon as possible.

During a March 31, 2020 proceeding, the judge stated that the case was before him for review of a DCPP matter and Valerie's request for sole legal custody and to suspend Richard's parenting time. He noted that the matter had been before him previously and that he had ordered various relief, including that DCPP would arrange for therapeutic reunification. He referenced the recent DCPP report, indicating that Dr. Bromberg's recommendations were consistent with his prior recommendations. When the judge stated that he was likely to adopt Dr. Bromberg's findings and recommendations, Valerie's counsel objected, stating that Valerie had "multiple experts opining that sole legal custody is in [Anna's] best interest." He acknowledged that he had not actually provided the judge with a copy of those expert opinions. He asked to put Dr. Bromberg "on the stand." The judge noted that he already had ordered in

6

December that DCPP would arrange for "therapeutic reunification" with Richard. He denied Valerie's request for sole legal custody, stating that "[f]or me, a huge issue with custody is whether or not a parent would – is likely to reinforce the relationship with the other parent" and that "[f]or me this was a follow up more or less to see what Dr. Bromberg had to say . . . I'm going to adopt his recommendations as I ordered before, but I don't believe that this is a case for sole legal custody, because I think that is adverse to what the doctor has stated in his findings."

In a March 31, 2020 order, the judge denied "without prejudice" Valerie's application for sole legal custody, ordered that the therapeutic visitation efforts continue, and adopted certain recommendations made in Dr. Bromberg's evaluation.

After Valerie filed this appeal, the judge issued an amplification of his decision pursuant to Rule 2:5-1(b). In that amplification, the judge stated that Valerie had failed to make a prima facie showing of a substantial change in circumstances that warranted further discovery on her request for modification of the parties' custody arrangement. He referenced his December 3, 2019 order requiring therapeutic reunification, Dr. Bromberg's recommendation to reunify

A-3456-19T3

Richard and Anna, and Dr. Bromberg's finding that custody should not be changed or that Richard was not a danger to Anna.

In this appeal, Valerie faults the judge for denying Valerie's motion and for adopting Dr. Bromberg's recommendations without conducting a plenary hearing.

Because of the Family Part's special jurisdiction and its judges' expertise in family matters, we defer to a Family Part judge's factual determination if supported by "adequate, substantial, and credible evidence in the record." Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012). We also "accord great deference to discretionary decisions of Family Part judges." Ibid. A trial court abuses its discretion when it makes a decision "'without a rational explanation, inexplicably depart[ing] from established policies, or rest[ing] on an impermissible basis.'" Flagg v. Essex Cnty., Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)). A "judge's legal decisions are subject to our plenary review." Milne, 428 N.J. Super. at 197-98.

The moving party in a custody-modification motion is not entitled to discovery or an evidentiary hearing without meetings "the threshold standard of changed circumstances." J.B. v. W.B., 215 N.J. 305, 327 (2013); see also Lepis

v. Lepis, 83 N.J. 139, 157 (1980) ("[a] prima facie showing of changed circumstances must be made before a court will order discovery"); Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007) ("[a] party seeking to modify custody must demonstrate changed circumstances that affect the welfare of the children"); Chen v. Heller, 334 N.J. Super. 361, 380 (App. Div. 2000) (party seeking to modify custody must show substantial change in circumstances from time current custody was established). A prior custody order, "whether reached by consent or adjudication, embodies a best interests determination." Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993). With that determination having been made in a prior custody order, a party seeking to modify the order "must bear the threshold burden of showing changed circumstances which would affect the welfare of the children." Ibid.

The only support for Valerie's motion was her certification, and nothing in the certification indicated a change in circumstances since the judge issued his prior order. Valerie did not assert in the certification that a change in circumstances had occurred. Instead, she relied on her descriptions of Dr. Branch's report and the trauma counselor's letter. Nothing in her descriptions of the report and letter indicated changed circumstances. According to Valerie, Dr. Branch opined that she should have sole custody so she could parent Anna

A-3456-19T3

"minus the animus and discord that seems to have plagued co-parenting arrangements with" Richard. That the parties' co-parenting efforts have been plagued with "animus and discord" is nothing new. As Valerie conceded in her appellate brief, the parties "have been involved in nearly continuous custody and parenting time litigation for the past six years." According to Valerie, the trauma counselor in her letter stated that Anna had had a "marked improvement" since Richard's overnight parenting time was suspended in July 2019. She does not say in what way Anna had a marked improvement or what the marked improvement was, she does not attribute the marked improvement to any particular cause, and she does not indicate when the marked improvement occurred or whether it occurred before the last order. That does not rise to the level of a prima facie demonstration of changed circumstances.

Valerie's submissions in support of her motion and appeal actually show that no change in circumstances has taken place since the prior order. Even though the judge on December 3, 2019, had ordered therapeutic reunification sessions between Richard and Anna, those sessions, through no fault of Richard, had not yet occurred and Richard still had not had any parenting time with Anna.

The better course would have been for the judge to set forth on the record on March 30, 2020, or in his March 31, 2020 order, the explanation for his denial

of Valerie's motion that he gave in his amplification. Nevertheless, we find no abuse of discretion in his ultimate determination that Valerie had failed to demonstrate a change in circumstances warranting a plenary hearing on the custody-modification application or in his denial of that application.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3456-19T3